UNITED STATES of America, Plaintiff–Appellee,

v.

Michael David SITTON, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald Lee DEWBRE, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Anthony CROUSHORN, Jr., Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Criciente ROMERO, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Frank Ernest PIANTADOSI, Defendant–Appellant.

Nos. 91–50154, 91–50156, 91–50166 *, 91–50173 * and 91–50199 *.

United States Court of Appeals, Ninth Circuit.

Argued May 5, 1992.

Submitted June 15, 1992.

Decided July 2, 1992.

---

* The panel unanimously finds these cases suitable for submission on the records and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34–4.

Joseph T. Vodnoy and Joseph F. Walsh, Los Angeles, Cal., for defendant-appellant Dewbre.

Carolyn Chapman, San Diego, Cal., for defendant-appellant Sitton.

Terry Amdur, Pasadena, Cal., for defendant-appellant Croushorn.

Rose Reilly, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant Romero.

John P. Martin, Talcott, Lightfoot, Vandevelde, Woehrle & Sadowsky, Los Angeles, Cal., for defendant-appellant Piantadosi.

Melinda L. Haag, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before: ALARCON, NORRIS, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Appellants were indicted and tried together on drug charges. Following a jury trial, all were convicted of conspiracy to manufacture and to possess methamphetamine with intent to distribute. Croushorn, Piantadosi, and Dewbre were also convicted of manufacturing and possessing methamphetamine with intent to distribute, and of possessing ephedrine with intent to manufacture methamphetamine. Dewbre and Sitton were convicted of an additional count of possessing methamphetamine with intent to distribute. Appellants were sentenced to terms of imprisonment ranging from 168 to 360 months.

Appellants raise a number of challenges to their convictions and sentences. We reverse the convictions of Dewbre and Sitton on the possession with intent to distribute count and remand for clarification of the record with respect to Dewbre's sentencing. In all other respects we affirm.

## I

On Sunday May 27, 1990, Wayne Westphal, a Park Ranger at Death Valley National Monument, came across tire tracks heading off a dirt road toward a box canyon. Westphal followed the tracks into the canyon, where he saw several men and five trucks.[1] He also observed weapons. One of the men offered Westphal $200 to forget what he had seen. Westphal told the men he was going to write them tickets for driving off-road, and instructed them to pack their things and leave the canyon. Allen Dewbre and Duncan then jumped in one of the trucks and fled the canyon at a high rate of speed.

Westphal returned to his truck, outside the canyon, and radioed for help. Officers from the Inyo County Sheriff's Department and the Bureau of Land Management answered the call. Together, the law enforcement officers entered the canyon. The glassware and chemical containers they saw led them to believe they had found a methamphetamine lab. They ar-

rested Croushorn, Piantadosi, Helton Sr., and Helton Jr. A search of the area revealed weapons, equipment used to manufacture methamphetamine, five pounds of methamphetamine inside the canyon, and another fifteen pounds outside the canyon entrance.

Shortly after the Death Valley arrests, Allen Dewbre turned himself in to authorities and began providing information to the San Bernardino County Sheriff's Department. He informed the police that the conspirators had manufactured methamphetamine at a cabin in Death Valley, and led them there.

About this time, sheriff's deputies placed Ronald Dewbre under surveillance. Police followed Ronald Dewbre and Sitton to the Budget Mini Storage in Fontana, California, and learned they had gone into Unit 483. The deputies obtained a surreptitious entry ("sneak and peek") warrant for that unit. Upon execution of the warrant, they found equipment and chemicals used to manufacture methamphetamine, a drum containing 4.5 gallons of liquid which later tested positive for methamphetamine, and a large number of weapons.

On June 17, 1990, Croushorn, Romero, and Sitton met at the Budget Mini Storage and went to Unit 483. The manager thought he saw them pass something from the storage unit to Romero's truck. When officers arrested Romero after he left, they found ether and acetone in his truck. When arrested, Romero had in his possession a business card for Ramona Mini Storage, with the number 139 written on it. Officers executed a warrant on Unit 139, and found chemicals and equipment used in the manufacture of methamphetamine. Croushorn was listed on the lease agreement as an authorized user of this unit. In addition, police learned that Piantadosi had storage lockers at Airport Mini Storage. When searched under warrant, those lockers proved to contain additional chemicals and equipment used in manufacturing methamphetamine. The authorities also

---

1. Present in the canyon were: Gerald Dean Duncan and Allen Dewbre, both of whom later cooperated with the police; appellants Crous-

horn and Piantadosi; co-defendant Mark Helton, Sr.; and Mark Helton, Jr., against whom federal charges were dismissed before trial.

obtained warrants to search each defendant's residence. A number of weapons were found at Sitton's house.

At trial a government expert testified that no quantitative analysis of the amount of methamphetamine in the mixture seized from Unit 483 had been performed. After trial, a defense expert tested the mixture and found that it contained 68 grams of methamphetamine. The expert expressed the opinion that the mixture was waste from the manufacturing process.

## II

Appellants argue that the government violated their due process rights in two respects: first by bringing federal, rather than state, charges against them, and second by presenting perjured testimony to the grand jury.

### A

■ We lack the authority to review appellants' claim that the decision to charge them in federal court violated their due process rights. We have recently held that a prosecutor's charging decision cannot be judicially reviewed absent a prima facie showing that it rested on an impermissible basis, such as gender or race. *United States v. Redondo–Lemos*, 955 F.2d 1296, 1300–01 (9th Cir.1992); *United States v. Diaz*, 961 F.2d 1417, 1420 (9th Cir.1992); *United States v. Nance*, 962 F.2d 860, 865 (9th Cir.1992). Appellants do not claim that discrimination on the basis of any suspect characteristic played a role in their referral to federal court.

■ Sitton also contends that the trial court lacked jurisdiction because California has not affirmatively consented to federal jurisdiction over federal crimes in that state. This argument is frivolous. Federal courts have exclusive jurisdiction of offenses against the laws of the United States under 18 U.S.C. § 3231; the permission of the states is not a prerequisite to exercise of that jurisdiction. Sitton allegedly violated the laws of two sovereigns, California and the United States. Either or both could have prosecuted him. *See Unit-*

*ed States v. Figueroa–Soto*, 938 F.2d 1015, 1020 (9th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1181, 117 L.Ed.2d 424 (1992). Thus, Sitton's trial on federal charges in no way infringed upon the state's right to enforce its own laws.

### B

■ Appellants also assert that their indictment must be dismissed because Allen Dewbre perjured himself before the grand jury. The government concedes that Allen Dewbre testified falsely that his role was merely that of a helper rather than a cook and failed to disclose to the grand jury Duncan's presence at several "cooks" of methamphetamine.

■ The Supreme Court has recently held, in *United States v. Williams*, — U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), that the supervisory power of federal courts over grand jury proceedings is limited. Courts may not use that supervisory power "as a means of *prescribing* ... standards of prosecutorial conduct in the first instance." *Id.* 112 S.Ct. at 1742. The supervisory power can, however, be used to dismiss an indictment where misconduct before a grand jury "amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *Id.* (quoting *United States v. Mechanik*, 475 U.S. 66, 74, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring in the judgment)). And, of course, we need not look to the supervisory power at all if the misconduct rises to the level of a violation of the Fifth Amendment right to the judgment of an independent and informed grand jury. *See id.* 112 S.Ct. at 1744.

We need not decide if *Williams* has cut back on the power of this court to dismiss an indictment based on the presentation of perjured testimony to the grand jury. Even assuming it has not, we conclude that appellants are entitled to no such relief. Dismissal of the indictment is not appropriate "when a witness' alleged perjury is not material to the defendant's indictment and instead affects only the witness' credibili-

ty." *United States v. Spillone,* 879 F.2d 514, 524 (9th Cir.1989), *cert. denied,* —— U.S. ——, —— 111 S.Ct. 173, 210, 112 L.Ed.2d 137, 170 (1990); *see also, United States v. Evans,* 928 F.2d 858, 861 (9th Cir.1991) ("perjured testimony must be material to support dismissal"); *United States v. Claiborne,* 765 F.2d 784, 791 (9th Cir.1985) ("if sufficient non-perjurious testimony exists to support the indictment, the courts will not dismiss the indictment due to the presence of perjured testimony"), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). Allen Dewbre's falsehoods simply minimized the roles played by himself and an unindicted co-conspirator. They were not material to the evidence against the defendants, and therefore do not supply a basis for dismissing the indictment.

■ Appellants rely on *United States v. Basurto,* 497 F.2d 781 (9th Cir.1974), to support their claim that the prosecution was required to notify the grand jury, as well as defense counsel and the court, of Allen Dewbre's testimony. We have previously noted that *Basurto's* statement that the prosecutor has an obligation immediately to inform the court and opposing counsel of any perjury was dictum. *United States v. Bracy,* 566 F.2d 649, 654–55 (9th Cir. 1977), *cert. denied,* 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 109 (1978). Even if the government had an obligation to inform the court and defense counsel of its conclusion that Allen Dewbre had committed perjury, dismissal of the indictment would not be an appropriate remedy for violation of that obligation. *Id.* at 655–57.

■ We reject appellants' contention that *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), compels reversal when any perjured testimony is presented to the grand jury. *Vasquez* held that harmless error analysis did not apply to exclusion of blacks from the grand jury panel, because "discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself." *Vasquez,* 474 U.S. at 263–64, 106 S.Ct. at 623. Presentation of perjured testimony to the grand jury is not such a structural flaw. It is rather an error susceptible of quantitative assessment to determine its effect, and therefore suitable for harmless error analysis. *See Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). If the perjured testimony is not material to the guilt or innocence of the accused, its presentation to the grand jury is necessarily harmless and does not require reversal of a conviction or dismissal of the indictment. *Cf. Smith v. Phillips,* 455 U.S. 209, 220 n. 10, 102 S.Ct. 940, 947 n. 10, 71 L.Ed.2d 78 (1982) (noting that knowing use of perjured testimony by the prosecution at trial does not require reversal unless "the tainted evidence was material to the case").

### III

Appellants raise a number of challenges to evidentiary rulings. They contend that certain evidence should have been suppressed because it was obtained in violation of their constitutional rights. Dewbre also objects to admission of his conversation with sheriff's deputies and exclusion of evidence concerning the search of his house. We review the denial of appellants' suppression motions first, turning thereafter to Dewbre's complaints.

### A

■ Appellant Piantadosi contests the denial of his motion to suppress, arguing that his arrest was not supported by probable cause. We need not determine whether probable cause supported Piantadosi's arrest because we conclude that no evidence admitted at his trial was the fruit of that arrest.

Standing alone, "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). While "physical evidence and statements obtained as a result of such an arrest must be suppressed," *United States v. Alvarez,* 810 F.2d 879, 884 (9th Cir.1987), no evidence introduced at trial resulted from Piantadosi's arrest. Piantadosi made no post-arrest statements. The physical evi-

dence found in the box canyon was lawfully seized pursuant to the arrest of Piantadosi's co-defendants, because it was in plain view, and through a search of federal property in which no defendant had a privacy interest. Nor did the search, pursuant to warrant, of Piantadosi's house and storage locker depend upon his arrest. Piantadosi's presence at the remote box canyon where a clandestine methamphetamine laboratory and large quantities of methamphetamine were found, his criminal history, the criminal history of his companions in the box canyon, the discovery of equipment used to manufacture methamphetamine at the Heltons' home, and information connecting Ronald Dewbre, whose truck was found in the box canyon, to methamphetamine manufacture, amply established probable cause independent of Piantadosi's arrest. *See United States v. Salas*, 879 F.2d 530, 536–38 (9th Cir.), *cert. denied*, 493 U.S. 979, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989).

### B

Appellants Dewbre and Sitton also sought to suppress evidence obtained from Unit 483. On appeal they raise two challenges to the search of Unit 483, which we consider in turn.

▮▮▮▮ They first contend that the affidavit supporting the warrant for the surreptitious search of Unit 483 contained a material false statement in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[2] The trial court, following a hearing, ruled that the challenged statement was not false, and if false was not made deliberately or recklessly. These findings of fact are accepted unless clearly erroneous. *United States v. Elliott*, 893 F.2d 220, 222 (9th Cir.), *amended*, 904 F.2d 25, *cert. denied*, — U.S. —, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990).

The challenged portion of the affidavit stated:

Your Affiant, along with the other officers, surveilled the two suspects from the Riverside area to the Budget Mini Storage, located at 15991 Valley Boulevard, Fontana, where *they entered into Unit 483.*

(Emphasis added.) At the *Franks* hearing, the government conceded that the surveilling officers did not actually see the suspects enter Unit 483. Instead, the officers asked the manager to follow the suspects, and the manager reported that they had gone into Unit 483.

The district court's factual findings are not clearly erroneous. The statement that the suspects entered Unit 483 was not false. The affidavit did not state that the officers had personally observed the suspects' entry into Unit 483. It did omit the information that the manager, rather than police, had observed the suspects entering the unit. Dewbre has not made any showing, however, that this omission or misstatement was deliberate or reckless. A misstatement that "is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant that is based on it." *United States v. Davis*, 714 F.2d 896, 899 n. 5 (9th Cir.1983).

This case is distinguishable from *Davis*, where we held that failure of the affidavit properly to identify the source of the affiant's information rendered the warrant invalid. In *Davis* the affiant, Officer Thompson, simply copied another affidavit which stated that its affiant, Officer Epstein, had personal knowledge of much of the information it contained. Officer Thompson did not change the affidavit to state that Officer Epstein had been told or had observed certain things, but left it in the first person singular. *Id.* at 897–98. We held that the resulting affidavit contained material false statements, and that Officer Thompson knew them to be false when he signed the affidavit. *Id.* at 899. By contrast, the affidavit supporting the search of Unit 483 did not wrongly identify the source of the information that Sitton and Dewbre had entered Unit 483. It simply omitted any

---

**2.** The government contested Dewbre's standing to raise this issue below, but has conceded the point for purposes of appeal.

mention of the source. We see no reason to doubt the district court's conclusion that this omission was a simple oversight rather than a knowing falsehood.

Appellants also contend that the search of Unit 483 was unlawful because the "sneak and peek" warrant provided for notice any time within ten days of execution. This court has held that surreptitious entry warrants are constitutionally defective unless they "provide explicitly for notice within a reasonable, but short, time subsequent to the surreptitious entry. Such time should not exceed seven days except upon a strong showing of necessity." *United States v. Freitas*, 800 F.2d 1451, 1456 (9th Cir.1986). The district court concluded that the warrant was invalid under *Freitas*, and the government does not quarrel with that conclusion. Nonetheless, the district court denied the suppression motion, reasoning that the good faith exception announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applied. We need not determine if this decision was correct, because we conclude that the evidence found in Unit 483 was lawfully seized pursuant to a subsequent conventional search warrant.

■ The affidavit used to obtain the conventional warrant contained both information gained from the surreptitious search and other information. Because there is no evidence that the decision to seek the second warrant was prompted by the first search, the second warrant is valid if, excising the tainted statements, the untainted portions of the affidavit contain a sufficient showing of probable cause. *Salas*, 879 F.2d at 537; *United States v. Villegas*, 899 F.2d 1324, 1338 (2d Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990).

■ Standing alone, the affidavit supporting the conventional search, with all references to the surreptitious search redacted, may not have contained sufficient information to establish probable cause. However, attached to that affidavit, and incorporated in it by reference, was an earlier affidavit supporting the surreptitious entry warrant. That earlier affidavit

amply established probable cause independent of the surreptitious search.

## C

■ Dewbre contends that transcripts of a conversation he had with sheriff's deputies were improperly admitted at trial. According to Dewbre, this conversation was a plea negotiation and therefore inadmissible pursuant to Federal Rule of Criminal Procedure 11(e)(6) and Federal Rule of Evidence 410.

On June 18, 1990, the day after his arrest, Dewbre requested a meeting with two San Bernardino County Deputy Sheriffs at a local restaurant. The deputies recorded the conversation, apparently with Dewbre's knowledge and consent. Dewbre told the deputies, "I'm gonna offer you a trade." He then offered to "open doors" for the deputies to other drug labs, and said that in return he wanted to keep three of his cars. "As far as the cases that are pending against me," he said, "I can beat that in court. I'm confident of that, okay?" At trial the government was permitted, over Dewbre's objection, to play the tape of this conversation to the jury.

■ The district court's determination of whether the parties were engaged in plea discussions is a factual finding reviewed for clear error. *United States v. Leon Guerrero*, 847 F.2d 1363, 1367 (9th Cir.1988).

Rule 11(e)(6) makes inadmissible:

any statement made in the course of *plea discussions with an attorney for the government*. . . .

Fed.R.Crim.P. 11(e)(6)(D) (emphasis added). Similarly, Federal Rule of Evidence 410 proscribes the admission of:

any statement *made in the course of plea discussions with an attorney for the prosecuting authority*. . . .

Fed.R.Evid. 410(4) (emphasis added). The underscored language was added to both Rules in 1979. The earlier versions of the Rules made inadmissible "statements made in connection with" and related or relevant to offers to plead guilty or nolo contendere.

Dewbre's statements to the deputies do not meet the requirements of either of these Rules. The sheriff's deputies, while government agents, were not attorneys for the government. The specific language of the current Rules provides no room to expand their scope to cover discussions with law enforcement officers generally. The Rules were amended effective December 1, 1980, specifically to clarify that only statements during the course of plea negotiations with a government attorney, not statements made to law enforcement officers generally, are inadmissible. *See* Notes of Advisory Committee accompanying 1979 Amendments to Rule 11 (purpose of Rule 11(e)(6) is to permit unrestrained candor in plea discussions between defendant or defense counsel and counsel for the government; amended Rule does not attempt "to deal with confrontations between suspects and law enforcement agents"). We have previously construed the revised version of Rule 410(4) to extend only to discussions with a prosecutor rather than with law enforcement agents. *United States v. Bernal*, 719 F.2d 1475, 1478 (9th Cir.1983). We now hold that Rule 11(e)(6) is subject to the *Bernal* limitation.

The Eighth Circuit has applied Rule 11(e)(6) to situations in which a law enforcement officer "with *express* authority from a government attorney" enters into negotiations with a defendant. *United States v. Lawrence*, 952 F.2d 1034, 1037 (8th Cir.1992); *Rachlin v. United States*, 723 F.2d 1373, 1376 (8th Cir.1983). We need not determine whether these cases apply because Dewbre does not allege that the sheriff's deputies were given any authority to bargain by the United States Attorney's office.

In addition, conversations with government agents do not constitute plea discussions unless the defendant exhibits a subjective belief that he is negotiating a plea, and that belief is reasonable under the circumstances. *Leon Guerrero*, 847 F.2d at 1367. Where the "record does not disclose a clear expression of subjective intent on the part of the accused to pursue plea negotiations, the accused's after the fact expressions of his intent must be more carefully evaluated.... [T]he objective record must establish that the accused's statements were made in a reasonable belief that he was negotiating a plea agreement." *United States v. Robertson*, 582 F.2d 1356, 1367 (5th Cir.1978). Dewbre gave no indication that he was offering to enter a plea of guilty or nolo contendere. In fact, he said he was "confident" he could "beat" the charges in court. While he was attempting a negotiation of a sort with police, it does not appear that he believed he was negotiating a plea, nor would such a belief have been reasonable under the circumstances.

### D

Dewbre sought to introduce the testimony of his son that five to seven police officers had entered the family home with guns drawn and pointed at family members on May 28, 1990. The district court determined both that the proffered evidence was irrelevant and that, assuming it were relevant, its probative value was outweighed by its potential for delay.

Dewbre contends that the evidence was relevant to establish that his statements to sheriff's deputies twenty days later were unreliable because they resulted from fear for his family's safety. We reject the government's argument that Dewbre waived his right to raise this claim by failing to assert it prior to introduction of his taped statements. Dewbre challenges not the admission of his statements but rather the exclusion of other evidence. Because he made an offer of proof below, he is entitled to raise this claim on appeal. *See* Fed.R.Evid. 103(a). *See also Crane v. Kentucky*, 476 U.S. 683, 687–88, 106 S.Ct. 2142, 2145, 90 L.Ed.2d 636 (1986) (admission of confession as voluntary does not preclude admission of evidence of circumstances under which confession made).

We conclude that the district court did not abuse its discretion in excluding the proffered evidence. The circumstances of the May 28 encounter with police could be only marginally relevant, at best, to the

reliability of Dewbre's June 18 statements. This case is far removed from *Crane v. Kentucky,* in which the Supreme Court held that a defendant was entitled to introduce "evidence about the environment in which the police secured his confession." 476 U.S. at 691, 106 S.Ct. at 2147. Crane "sought to paint a picture of a young, uneducated boy who was kept against his will in a small, windowless room for a protracted period of time until he confessed to every unsolved crime in the county." *Id.* Dewbre, by contrast, admits that his confession was made at his instigation and in the place of his choosing, a public restaurant. The district court was not required to admit evidence that police nearly three weeks earlier had entered his house with guns drawn.

### E

▮▮ Sitton claims that the district court erred in admitting into evidence firearms and methamphetamine seized during an unrelated search of his home in January 1990. Sitton describes this as evidence of prior bad acts under Federal Rule of Evidence 404(b) and asserts that the trial court improperly failed to weigh its probative value against its prejudicial effect. The government responds that the evidence was not of prior bad acts, but rather was directly relevant to prove Sitton's participation in the conspiracy.

▮▮ Whether evidence constitutes "other crimes" evidence admissible only as provided in Rule 404(b) is a question of law reviewed de novo. *United States v. Mundi,* 892 F.2d 817, 820 (9th Cir.1989), *cert. denied,* — U.S. ——, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991). The decision to admit evidence is reviewed for abuse of discretion. *Id.*

We conclude that the evidence seized in the January search fell within the scope of the indictment. The indictment alleged that the conspiracy began on a date un-

known. It listed overt acts beginning in December 1989 and continuing to June 17, 1990. Although the only listed overt acts committed by Sitton occurred in June, the government introduced evidence at trial that he was connected to the conspiracy as early as February. The evidence seized in January was relevant to show that Sitton, an alleged member of the conspiracy, was involved with drugs and weapons (the alleged purposes and means of the conspiracy) during the relevant period. *See United States v. Lai,* 944 F.2d 1434, 1439 (9th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992).

▮▮ Sitton also contends that the evidence should have been excluded under Rule 403, which allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Sitton did not request a Rule 403 balancing below. Under the circumstances, this court reviews only for plain error. *United States v. Gomez–Norena,* 908 F.2d 497, 500 (9th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). Since the evidence was directly relevant to the charges in the indictment, any prejudice to Sitton was not "unfair." *See United States v. Booth,* 669 F.2d 1231, 1240 (9th Cir.1981). The probative value of the evidence is not so manifestly outweighed by its potential for prejudice that its admission could be considered plain error.

### IV

▮▮ Dewbre and Sitton challenge the district court's refusal to instruct the jury on the lesser included offense of simple possession with respect to Count Five of the indictment, which charged them with possessing with intent to distribute the mixture containing methamphetamine seized from Budget Mini Storage.[3] Appellants' theory was that, if they possessed

---

3. Sitton did not raise this argument in his opening brief, but filed a motion seeking to join Dewbre's argument on this point. Although the cases were not formally consolidated, they were presented simultaneously to the same merits panel. Accordingly, the government suffered no surprise or prejudice by reason of Sitton's tardiness. We therefore allow Sitton to join this argument. Sitton, like Dewbre, requested a lesser included offense instruction below.

this mixture, they did so with intent to dispose of it rather than to distribute it.

The proper standard of review of a district court's refusal to give a requested jury instruction is somewhat uncertain in this circuit. Some cases have applied the abuse of discretion standard, while others have reviewed de novo. *See United States v. Whitehead*, 896 F.2d 432, 434 (9th Cir.), *cert. denied*, ——— U.S. ———, 111 S.Ct. 342, 112 L.Ed.2d 306 (1990) (describing conflict); *United States v. Sotelo–Murillo*, 887 F.2d 176, 179 (9th Cir.1989) (same). We need not attempt to resolve this apparent conflict here because even applying the more deferential abuse of discretion standard we are persuaded that the district court erred in failing to give the requested instruction.

"A defendant is entitled to a lesser included offense instruction when the elements of the lesser offense are a subset of the elements of the charged offense and a factual basis supports such an instruction." *United States v. Powell*, 932 F.2d 1337, 1341 (9th Cir.) (internal quotation marks omitted), *cert. denied*, ——— U.S. ———, 112 S.Ct. 256, 116 L.Ed.2d 210 (1991). Simple possession of a controlled substance is a lesser included offense with respect to possession with intent to distribute. *Id.* at 1341–42. To establish the required factual basis, the defendant must show that the jury could rationally find him guilty of the lesser offense while acquitting him of the greater. *Id.* at 1342.

Appellants contend that the mixture was waste from the manufacture of methamphetamine, containing only traces of the drug. Uncontested testimony at trial established that the mixture tested positive for methamphetamine. The government's expert testified that it could contain as little as 0.2 grams or as much as one pound of the drug. This witness also testified to his opinion that the mixture contained acetone and had an extremely high pH, perhaps due to the presence of lye. When asked if lye and acetone would be ingested by methamphetamine users, he stated that such ingestion would probably be harmful.

"Where there are large quantities of a drug and other evidence tending to establish distribution, [this court has] declined to require a possession instruction." *Powell*, 932 F.2d at 1342; *see also United States v. Espinosa*, 827 F.2d 604, 615 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988). Under such circumstances, no rational jury could conclude that the defendant possessed the drug without also concluding that he intended to distribute it. However, in this case a rational jury could have believed that the mixture contained only traces of methamphetamine and that it was waste from the manufacturing process that defendants did not intend to repurify. A sufficient factual basis supported the theory of simple possession on this count. We therefore reverse the convictions of Dewbre and Sitton on Count Five.

At oral argument, Sitton contended for the first time that this error also taints his conviction on the conspiracy charge. Because it was not timely raised, we need not consider this claim. *See Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir.1991); *United States v. Rewald*, 889 F.2d 836, 854 n. 10 (9th Cir.1989), *amended*, 902 F.2d 18, *cert. denied*, ——— U.S. ———, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990); *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir.1988), *cert. denied*, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).

## V

Appellants Sitton and Dewbre also take exception to the district court's refusal to grant them a new trial on the basis of allegedly newly discovered evidence. The evidence they cite is the post-trial chemical analysis of the contents of the mixture seized from Unit 483.

The denial of a motion for new trial is reviewed for abuse of discretion. *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir.1991). To gain a new trial the movant must show: (1) the evidence is newly discovered; (2) the failure to discover the evidence sooner was not the result of lack of diligence; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5)

the evidence indicates that a new trial would probably result in acquittal. *Id.*

After the trial, a defense expert conducted quantitative tests on the mixture found in Unit 483. The expert determined that the mixture contained 68 grams of methamphetamine, and expressed the opinion that it was a waste product. Appellants insist that this evidence entitles them to a new trial.

We disagree. Appellants' failure to discover the amount of methamphetamine in the mixture prior to trial resulted from lack of diligence. They knew the government was pressing a possession with intent to distribute charge on the basis of the mixture. Given their theory that the mixture was waste, the amount of methamphetamine it contained was obviously material. Appellants thus had both the opportunity and the motive to test the mixture prior to trial.

The only justification presented by appellants for their failure to ascertain its contents earlier is that they assumed the government would perform quantitative tests. We do not believe this assumption excuses their decision to sit by until the trial was complete before seeking to determine the contents of the mixture. We have no way of knowing, but appellants may have hoped to benefit at trial from uncertainty about the quantity of methamphetamine in the mixture. Had the jury chosen to adopt the lower limit figure cited by the government's expert, 0.2 grams, the appellants might well have won an acquittal on that count. We are loath to grant a new trial on the basis of any such tactical decision to postpone testing.

## VI

Appellants raise other challenges to their convictions which do not merit extended discussion.

### A

■ Sitton contends that his attorney's failure to test the Budget Mini Storage mixture prior to trial denied him the effective assistance of counsel. This court has repeatedly held that "the customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255." *United States v. Birges,* 723 F.2d 666, 670 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472, 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 131 (1984); *see also United States v. Houtchens,* 926 F.2d 824, 828 (9th Cir. 1991); *United States v. Pope,* 841 F.2d 954, 958 (9th Cir.1988). Ineffective assistance claims are ordinarily reviewed only in collateral proceedings because such claims usually cannot be resolved without the development of facts outside the original record. *Birges,* 723 F.2d at 670; *see also United States v. Wagner,* 834 F.2d 1474, 1482–83 (9th Cir.1987). This case is no exception. We decline to consider Sitton's ineffective assistance of counsel claim, and express no opinion on its merits.

### B

■ Sitton next asserts that the evidence was insufficient to support his conviction on either Count One (conspiracy) or Count Five (possession with intent to distribute). In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Torres–Rodriguez,* 930 F.2d 1375, 1382 (9th Cir.1991); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Sitton does not dispute that the government proved the existence of a conspiracy to manufacture methamphetamine. In order to convict Sitton on the conspiracy charge in Count One, the government needed to prove beyond a reasonable doubt that he had a slight connection to that conspiracy. *United States v. Hernandez,* 876 F.2d 774, 779 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). Contrary to Sitton's protestations, his is not a case of mere presence at the scene. Sitton paid the rent for Unit 483, which was used to store equipment, chemi-

cals, and the mixture containing methamphetamine. He had access to that unit, and was seen in it with conspirator Dewbre. He and conspirator Croushorn transferred chemicals from Unit 483 to conspirator Romero's truck. This evidence was sufficient to allow a rational jury to conclude that Sitton knew of the conspiracy and intended to further its goals. *Torres–Rodriguez*, 930 F.2d at 1382.

■ Sitton also contends that the evidence was insufficient to convict him on Count Five, possession with intent to distribute the mixture found in Unit 483.[4] Sitton apparently does not contest the jury's conclusion that the mixture was possessed with intent to distribute. Given the testimony that it could have contained a pound of methamphetamine, as well as the evidence that the conspirators were involved in manufacturing methamphetamine for distribution, a rational jury could indeed conclude that Sitton and Dewbre intended to distribute the methamphetamine in the mixture. Sitton argues, however, that the government did not prove that Sitton possessed the mixture. According to Sitton, the government had to prove constructive possession, because Sitton's name was not on the lease. This claim is meritless. Sitton paid the rent on Unit 483, and had access to it. He was seen in the unit more than once. There was abundant evidence to support a jury finding that Sitton had actual possession of the mixture.

■ At oral argument, Sitton further contended that the government was required to prove that he had sole or exclusive possession of the mixture. We disagree. "To prove the element of possession, the government need not demonstrate exclusive actual possession; it may be satisfied by proof of constructive or joint possession." *United States v. Chambers*, 918 F.2d 1455, 1457 (9th Cir.1990).

### C

■ Sitton also takes exception to the district court's refusal to sever his trial

from that of his co-defendants. The denial of a motion to sever under Federal Rule of Criminal Procedure 14 is reviewed for abuse of discretion. *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir.1991). To obtain reversal, the accused must show clear, manifest, or undue prejudice from a joint trial, amounting to denial of the right to a fair trial. *United States v. Candoli*, 870 F.2d 496, 510 (9th Cir.1989).

The mere fact that the government's evidence is stronger against one co-defendant than another does not mandate severance. *Id.* Moreover, as the government points out, virtually all of the evidence admitted against Sitton's co-defendants would have been admissible against Sitton in a separate trial on the conspiracy count. *See United States v. Crespo de Llano*, 838 F.2d 1006, 1020 (9th Cir.1987). Sitton has not met the heavy burden of showing that he was entitled to severance.

### VII

Finally, appellants challenge their sentences. We consider first their claim that departure was warranted, and then Dewbre's contention that he was improperly denied an acceptance of responsibility reduction.

### A

■ Appellants contend that the district court should have departed downward because their sentences would have been substantially shorter had they been tried on state charges. In support of this argument they offer *United States v. Ray*, 930 F.2d 1368, 1372–73 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1084, 112 L.Ed.2d 1189 (1991). In *Ray*, this court held that departure was permissible to equalize the sentences of co-defendants. All defendants had been tried in federal court, but Ray's co-defendants had been sentenced outside the Guidelines following this circuit's holding that the Guidelines were unconstitutional. "[O]n these unusual facts," the

---

**4.** Although we have already determined that Sitton's conviction on this count must be reversed, we consider his sufficiency claim because suc-

cess on this claim would bar retrial. *See Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978).

*Ray* court held that downward departure was authorized. *Id.* at 1373. We have also recently suggested that departure may be permissible where some conspiracy co-defendants pled guilty to pre-Guidelines offenses and others who went to trial were sentenced under the Guidelines. *United States v. Boshell,* 952 F.2d 1101, 1108 (9th Cir.1991).

We decline to extend *Ray* to the situation in which co-conspirators could be exposed to different sentences as a result of prosecution in different jurisdictions. We hold that sentencing courts may not depart from the Guidelines on the basis of disparities between state and federal sentencing regimes. In creating the Sentencing Commission, Congress sought to achieve national uniformity of sentences for similarly situated defendants. *See* 28 U.S.C. § 991. Allowing departure because the defendant could have been subjected to lower state penalties would undermine the goal of uniformity by making federal sentences dependent on the practice of the state within which the federal court sits. Furthermore, departure from the Guidelines should be limited to the "atypical" case. *See* U.S.S.G. Ch. 1, Part A.4(b) (policy statement). Drug defendants often would face different sentences if tried on equivalent state charges. This disparity is not, therefore, an unusual factor warranting departure.

It is not clear from the record here whether any co-conspirator has been tried and sentenced to a lesser term on state charges.[5] Even assuming such were the case, a downward departure from the federal guidelines, while perhaps correcting a disparity among co-defendants' sentences, would create a disparity with sentences imposed on all similar offenders in other federal cases. "The greater uniformity trumps the lesser disparity." *United States v. Mejia,* 953 F.2d 461, 468 (9th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 1983, 118 L.Ed.2d 581 (May 18, 1992). We have recently held that "disparity in the sen-

tences received by co-accused [sentenced in federal and state courts] is not an appropriate basis for downward departure from the Guidelines." *United States v. Reyes,* 966 F.2d 508, 510 (9th Cir.1992). A fortiori, departure is not authorized where such a disparity has been alleged but not demonstrated.

**B**

■■■ Dewbre argues that the district court improperly denied him a two-point reduction for acceptance of responsibility pursuant to Guidelines section 3E1.1. He asserts that he was denied the two-level reduction because he would not discuss the facts of his case prior to appeal, and that this denial violated his Fifth Amendment right against self-incrimination.

■■■ We are unable to determine from the record the basis of the trial court's denial of this reduction. The sentencing court may, and indeed must, deny an acceptance of responsibility reduction if it finds that a defendant has failed to demonstrate contrition. *See United States v. Skillman,* 922 F.2d 1370, 1379 (9th Cir. 1990), *cert. dismissed,* — U.S. —, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991). However, the court may not consider against the defendant any constitutionally protected conduct. *United States v. Watt,* 910 F.2d 587, 592 (9th Cir.1990). Thus, the district court may deny the reduction because of a lack of contrition despite the increased costs imposed upon the defendant's choice to remain silent or to proceed to trial, but may not deny the reduction because of that choice in spite of other manifestations of sincere contrition.

The sentencing court's brief statement that it was denying Dewbre's request for reduction does not reveal the reason for the denial. We are unable to determine whether the denial was consistent with Dewbre's constitutional rights. We therefore remand to the district court for the limited

---

**5.** Appellant Croushorn states that Helton, Jr. pleaded guilty to a state charge of accessory after the fact and that "his attorney has advised he will likely receive probation." Nothing ap-

pears in the record with respect to any state charges filed against Helton, Jr., or the disposition of those charges.

purpose of clarifying the record on this issue. We request that the district court make additional findings as to its reasons for denying the requested acceptance of responsibility reduction.

Dewbre also alleges that, in rejecting his request for a two-point acceptance of responsibility reduction, the district court improperly applied a November 1990 amendment to the Guidelines. We are unable to ascertain from our review of the record whether the amended commentary was a determinative factor in the district court's decision, or whether the requested reduction would also have been denied under the earlier version of the Guidelines. Since we have already determined that a limited remand is required, we ask that the district court also make additional findings clarifying whether, if the sentence were based solely on the pre–1990 Guidelines, the reduction would have been denied.

### VIII

We AFFIRM the convictions and sentences of Croushorn, Romero, and Piantadosi. We REVERSE the convictions of Dewbre and Sitton on Count Five but AFFIRM all their other convictions. We REMAND *United States v. Dewbre,* No. 91–50156, for the limited purpose of clarifying the record on sentencing. We retain jurisdiction in *Dewbre* and request that the district court make its findings respecting the acceptance of responsibility reduction within thirty days and provide those findings to this court.

AFFIRMED in part, REVERSED and REMANDED in part.