**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10560 |
| Plaintiff - Appellee, | D.C. No. 4:09-cr-01619-FRZ-BPV-1 |
| v. | |
| WILLIAM FLOYD ZAMASTIL, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, Senior District Judge, Presiding

Argued and Submitted December 5, 2013[**]
San Francisco, California

Before: SILVERMAN, CALLAHAN, and N.R. SMITH, Circuit Judges.

William Zamastil appeals his 18 U.S.C. § 1111 first-degree murder

conviction for the 1973 murder of Leesa Jo Shaner, alleging various errors at trial.

The general verdict rested on alternate theories of premeditation and felony-murder

predicated on rape. We affirm Zamastil's conviction.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1. Reviewing the district court's admission of Zamastil's rape and murder of Mary Johnson under Federal Rule of Evidence ("FRE") 404(b), we find no abuse of discretion. *See United States v. Jackson*, 84 F.3d 1154, 1158-59 (9th Cir. 1996). The district court properly considered the period of time between the Johnson and Shaner crimes and whether the similarities between them warranted an inference that Zamastil had committed the murder at issue. *See United States v. Luna*, 21 F.3d 874, 878-79 (9th Cir. 1994). Because a thirteen-year period has been upheld, *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989), and the similarities need not amount to a "signature" by the defendant, *see United States v. Gonzalez*, 533 F.3d 1057, 1063-64 (9th Cir. 2008), we cannot say the district court abused its discretion in admitting this evidence under 404(b).

Further, because Zamastil was "accused of a sexual assault, the court [could] admit evidence that [Zamastil] committed any other sexual assault." Fed. R. Evid. 413(a). Zamastil's FRE 413 constitutionality challenges are also without merit. *See Carmell v. Texas*, 529 U.S. 513, 533 n.23 (2000); *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001).

Moreover, given the similarities between the Johnson and Shaner crimes and the limiting instruction, the district court did not abuse its discretion in its FRE 403

weighing of the Johnson crimes. *See United States v. Winters*, 729 F.2d 602, 604 (9th Cir. 1984).

2. We review admission of evidence for plain error if the defendant makes a specific objection on the wrong ground. *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990). The district court did not plainly err under FRE 404 by admitting Zamastil's statement that "he liked killing people." Any error likely did not "affect[] the outcome of the district court proceedings," *United States v. Jiminez-Dominguez*, 296 F.3d 863, 867 (9th Cir. 2002), because the statement was introduced alongside Zamastil's properly admitted, detailed descriptions of enjoying raping and murdering Shaner.

Further, introducing this statement was not an abuse of discretion under FRE 403. Any jury speculation about other murders by Zamastil was mitigated by the introduction of Zamastil's confession to murdering Johnson right before his statement that "he liked killing people."

3. We review for clear error the district court's determination whether parties were engaged in plea discussions, for purposes of FRE 410 and Federal Rule of Criminal Procedure 11. *United States v. Guerrero*, 847 F.2d 1363, 1367 (9th Cir. 1988). A statement to a U.S. Attorney is inadmissible when made in the course of plea discussions "if (1) the suspect exhibited an actual subjective

expectation that [he] was negotiating a plea at the time of the discussion and (2) [his] expectation was reasonable given the totality of the circumstances."[1] *United States v. Sayakhom*, 186 F.3d 928, 936 (9th Cir. 1999).

We cannot say the district court clearly erred in finding plea discussions began after May 20, 1981. Zamastil's alleged expectation that earlier conversations constituted plea discussions contradicts his attorney's June 30, 1981 letter stating that Zamastil did "not wish to *enter* into negotiations" with the U.S. Attorney's office. (Emphasis added). Further, the district court's finding that Zamastil's subjective expectation was unreasonable cannot be clear error. Indictment was not imminent; U.S. Attorney Bates Butler's letter inviting Zamastil to provide information did not inquire into the Shaner murder; and the record evidenced that Zamastil learned *after* May 20, 1981 of the letter from the U.S. Attorney's office to Zamastil's attorney asking him to proffer Zamastil's Shaner murder testimony. *See id.*

---

[1]FRE 410 and Federal Rule of Criminal Procedure 11 do not apply to Zamastil's statements to FBI Agent William Doss. "[O]nly statements during the course of plea negotiations with a government attorney, not statements made to law enforcement agents generally, are inadmissible." *United States v. Sitton*, 968 F.2d 947, 957 (9th Cir. 1992) (*abrogated on other grounds by Koon v. United States*, 518 U.S. 81, 96-100) (1996)).

Reviewing de novo Zamastil's *Miranda* waiver claim, *United States v. Brobst*, 558 F.3d 982, 995 (9th Cir. 2009), we find no error. Zamastil admits there is no authority directly supporting his argument.

Reviewing de novo the district court's determination that Zamastil's statements to law enforcement officers were voluntary under the totality of the circumstances, we find that Zamastil's confessions were voluntary, not "obtained . . . by physical or psychological coercion or by improper inducement so that [Zamastil's] will was overborne." *Guerrero*, 847 F.2d at 1365-66. Doss advised Zamastil of his constitutional rights during each interview; Doss did not promise leniency in exchange for information; and Zamastil had experience with the criminal prosecution system.

4. The district court did not abuse its discretion by declining to give an alibi instruction. *See United States v. Hairston*, 64 F.3d 491, 493 (9th Cir. 1995). For his argument, Zamastil relies on evidence that was not alibi evidence, because no time or place was specified for the photo Zamastil had mentioned but never produced.

5. The district court did not abuse its discretion in finding "the instructions as a whole [were not] misleading or inadequate to guide the jury's deliberation." *United States v. Garcia-Rivera*, 353 F.3d 788, 791-92 (9th Cir. 2003) (citation omitted). The jury instructions adequately covered the jurisdictional element,

stating three times that the government had to prove beyond a reasonable doubt that the killing had occurred on Fort Huachuca. Instruction regarding where a murder is deemed to occur was unnecessary. No evidence at trial suggested that an injury causing death occurred somewhere other than Fort Huachuca, and Shaner died at Fort Huachuca.

Reviewing de novo, we also do not find that the instructions failed to "adequately present [Zamastil's] theory of the case." *See United States v. Liu*, 538 F.3d 1078, 1088 n.5 (9th Cir. 2008). Zamastil's theory that he had killed Shaner elsewhere and merely buried her body at Fort Huachuca, was adequately covered by the jurisdictional instructions given.

6. We review prosecutorial statements to which the defendant does not object for plain error. *United States v. Brown*, 327 F.3d 867, 871 (9th Cir. 2003). The district court did not plainly err by allowing the government to briefly question about Zamastil refusing to provide his biological samples absent a search warrant, or by permitting the government to reference the search warrant's execution in its closing argument. Because it is improper for a prosecutor arguing to the jury to "note[] that [a defendant] did not consent to a search" by law enforcement, *United States v. Taxe*, 540 F.2d 961, 968-69 (9th Cir. 1976), the government referencing the search warrant in closing argument may have been error. However, this

potential error was not "clear and obvious" under established law. *See United States v. Romero-Avila*, 210 F.3d 1017, 1022 (9th Cir. 2000). Our precedent does not bar evidence of a defendant's *possible* refusal to consent to a search due to such evidence's admission violating the defendant's Fourth Amendment rights, or the government's bare mention of a search warrant in its closing argument.

7. A general verdict withstands a sufficiency of the evidence challenge if the evidence was sufficient with respect to any one alternate basis of liability. *See Griffin v. United States*, 502 U.S. 46, 56-57 (1991). Zamastil's sufficiency of the evidence claim fails, because he only challenged one alternate basis of liability (i.e. felony-murder predicated on rape).

8. Finally, the cumulative effect of any alleged errors does not prejudice Zamastil. *See United States v. Fernandez*, 388 F.3d 1199, 1256-57 (9th Cir. 2004). If there were errors, we cannot say the jury would have acquitted Zamastil had these errors not occurred, when the jury could still rely on evidence of the Johnson rape and murder and Zamastil's many confessions.

The judgment of the district court is **AFFIRMED**.

United States v. Zamastil, 11-10560

SILVERMAN, Circuit Judge, dissenting:

I respectfully dissent.

Federal Rule of Evidence 410 says that "a statement made during plea discussions with an attorney for the prosecuting authority" is "not admissible against the defendant." Fed. R. Evid. 410(a)(4). *See also* Fed. R. Crim. P. 11(f) ("The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.").

Zamastil was visited in his Wisconsin prison by FBI Agent William Doss on June 19, 1980 and September 5, 1980 to discuss his potential involvement in the murder of Leesa Jo Shaner. At these sessions Zamastil expressed his desire to negotiate a plea deal involving concurrent sentencing. Agent Doss informed Zamastil that he had no authority to negotiate a deal but would check with the prosecutors. Up to this point, as *United States v. Sitton*, 968 F.2d 947 (9th Cir. 1992) makes clear, no plea negotiation had started. *See id.* at 956-57.

The situation changed on October 2, 1980. In response to Zamastil's request to work out a deal, Assistant U.S. Attorney Bates Butler sent the following letter to Zamastil:

> I have been informed by the Federal Bureau of Investigation that you possess information pertaining to homicides which may have occurred in Southern Arizona. While I am willing to consider some negotiated

> agreement in which I would seek a concurrent sentence for you if the information you provided incriminated you in other homicides, you have not yet provided sufficient information upon which I can base a decision. I have spoken with W. Randolph Stevens, Jr., Chief Criminal Deputy Pima County Attorney, and he agrees with me.
>
> Mr. Stevens and I are unwilling to "buy a pig in a poke." Before we make any commitments for our respective jurisdictions we will need some proffer from you about the incident about which you possess information. We need to know whether or not you were the individual in any situation who actually committed the act which directly resulted in an individual's death. In other words, what was the extent of your involvement in these homicides?
>
> Upon receipt of preliminary information from you, I will consult with Mr. Stevens about whether any deal can be made with you for a concurrent sentence.

This letter itself says that it is in furtherance of a possible negotiated agreement and it specifically invited Zamastil to make a "proffer" of the information he possessed. Not only that, Butler stated that he was also acting on behalf of the local Pima County prosecutor with an eye towards a package deal involving both jurisdictions.

Following up on that letter less than a month later, Agent Doss again visited Zamastil at the Wisconsin prison. As the government itself describes this October 29, 1980 visit, "[Doss] read defendant his '*Miranda* rights.' Defendant stated that he would waive his rights *for the limited purpose of providing additional information.* Doss explained that prosecutors in Arizona did not have enough information to made a determination and asked him to be more specific."

Government Brief at 14 (emphasis added).

Once the prosecutors became involved, directly communicated with Zamastil, invited him to make a proffer in aid of reaching a deal, and allowed him to make a limited waiver to provide prosecutors with information they would need to reach an agreement, there is only one way to interpret these undisputed events: negotiations had begun. True, no deal had yet been reached nor had an offer been tendered – they were only in the initial "Whaddya got?" stage of the negotiation dance. There is no question, however, that the dance was under way. As a result, all of Zamastil's statements made to Doss and Butler after Butler's October 2, 1980 letter – *i.e.*, the "limited purpose" statements he made to Doss on October 29, 1980 and the letters he sent to Doss and Butler on May 20, 1981 – should have been deemed inadmissible under Rule 410.[1]

---

[1] The majority concludes that, even if plea negotiations began on October 2, 1980, Rule 410 still would not exclude Zamastil's statements to Doss because the rule only applies to statements "made during plea discussions *with an attorney* for the prosecuting authority." Fed. R. Evid. 410(a)(4) (emphasis added). But, as other courts have held, it would be overly formalistic to read Rule 410 as only ever applying when the attorney is actually physically present for the negotiations. *See, e.g.*, *United States v. Ross*, 588 F. Supp. 2d 777, 783-84 (E.D. Mich. 2008) ("It is the involvement of a government attorney in the negotiation *process*, not his physical presence at the debriefing, that triggers the application of Rule 410.") (emphasis in original). When, as here, an Assistant U.S. Attorney demands a proffer of evidence and then an FBI agent shows up four weeks later, it is reasonable for a defendant to conclude that his discussions with the agent are part of that proffer.

Moreover, this error cannot be considered harmless because it is not "more probable than not that [it] did not materially affect the verdict." *United States v. Gonzalez–Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005). Three pieces of evidence were admitted in error: Zamastil's "limited purpose" statements to Doss on October 29, 1980; Zamastil's letter to Doss on May 20, 1981; and Zamastil's letter to Butler on May 20, 1981. Included in that evidence was the first time Zamastil mentioned Ms. Shaner by name ("Leesa Jo" in the letter to Doss and "Miss Shaner" in the letter to Butler), the first time he mentioned her body being left in the desert, and his statement that "I really feel that eight years is long enough to keep this in my nightmares." Indeed, that last statement was considered so pivotal that it was both the first line and the last line of the government's opening argument at trial. Given the importance of this evidence, it more probable than not that the error in admitting it materially affected the verdict.

I would reverse.

---

Moreover, the holding in *Sitton*, which the majority relies on, is distinguishable on this point. In that case, the Defendant sought to exclude statements made to the police the day after he was arrested and before there was any involvement by a prosecuting attorney. *Sitton*, 968 F.2d at 956-57. Indeed, *Sitton* itself specifically left open the question of whether the principle in Rule 410 applies "to situations in which a law enforcement officer 'with express authority from a government attorney' enters into negotiations with a defendant." *Id.* at 957 (quoting *United States v. Lawrence*, 952 F.2d 1034, 1037 (8th Cir. 1992)).