SILVERMAN, Circuit Judge,
dissenting:
I respectfully dissent.
Federal Rule of Evidence 410 says that “a statement made during plea discussions with an attorney for the prosecuting authority” is “not admissible against the defendant.” Fed.R.Evid. 410(a)(4). See also Fed.R.Crim.P. 11(f) (“The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.”).
Zamastil was visited in his Wisconsin prison by FBI Agent William Doss on June 19, 1980 and September 5, 1980 to discuss his potential involvement in the murder of Leesa Jo Shaner. At these sessions Zamastil expressed his desire to negotiate a plea deal involving concurrent sentencing. Agent Doss informed Zamastil that he had no authority to negotiate a deal but would check with the prosecutors. Up to this point, as United States v. Sitton, 968 F.2d 947 (9th Cir.1992) makes clear, no plea negotiation had started. See id. at 956-57.
The situation changed on October 2, 1980. In response to Zamastil’s request to work out a deal, Assistant U.S. Attorney Bates Butler sent the following letter to Zamastil:
I have been informed by the Federal Bureau of Investigation that you possess information pertaining to homicides which may have occurred in Southern Arizona. While I am willing to consider some negotiated agreement in which I would seek a concurrent sentence for you if the information you provided incriminated you in other homicides, you have not yet provided sufficient information upon which I can base a decision. I have spoken with W. Randolph Stevens, *451 Jr., Chief Criminal Deputy Pima County Attorney, and he agrees with me.
Mr. Stevens and I are unwilling to “buy a pig in a poke.” Before we make any commitments for our respective jurisdictions we will need some proffer from you about the incident about which you possess information. We need to know whether or not you were the individual in any situation who actually committed the act which directly resulted in an individual’s death. In other words, what was the extent of your involvement in these homicides?
Upon receipt of preliminary information from you, I will consult with Mr. Stevens about whether any deal can be made with you for a concurrent sentence.
This letter itself says that it is in furtherance of a possible negotiated agreement and it specifically invited Zamastil to make a “proffer” of the information he possessed. Not only that, Butler stated that he was also acting on behalf of the local Pima County prosecutor with an eye towards a package deal involving both jurisdictions.
Following up on that letter less than a month later, Agent Doss again visited Zamastil at the Wisconsin prison. As the government itself describes this October 29, 1980 visit, “[Doss] read defendant his ‘Miranda rights.’ Defendant stated that he would waive his rights for the limited purpose of providing additional information. Doss explained that prosecutors in Arizona did not have enough information to made a determination and asked him to be more specific.” Government Brief at 14 (emphasis added).
Once the prosecutors became involved, directly communicated with Zamastil, invited him to make a proffer in aid of reaching a deal, and allowed him to make a limited waiver to provide prosecutors with information they would need to reach an agreement, there is only one way to interpret these undisputed events: negotiations had begun. True, no deal had yet been reached nor had an offer been tendered— they were only in the initial “Whaddya got?” stage of the negotiation dance. There is no question, however, that the dance was under way. As a result, all of Zamastil’s statements made to Doss and Butler after Butler’s October 2, 1980 letter — i.e., the “limited purpose” statements he made to Doss on October 29, 1980 and the letters he sent to Doss and Butler on May 20, 1981 — should have been deemed inadmissible under Rule 410.[1]
*452 Moreover, this error cannot be considered harmless because it is not “more probable than not that [it] did not materially affect the verdict.” United States v. Gonzalez-Flores, 418 F.3d 1093, 1099 (9th Cir.2005). Three pieces of evidence were admitted in error: Zamastil’s “limited purpose” statements to Doss on October 29, 1980; Zamastil’s letter to Doss on May 20, 1981; and Zamastil’s letter to Butler on May 20, 1981. Included in that evidence was the first time Zamastil mentioned Ms. Shaner by name (“Leesa Jo” in the letter to Doss and “Miss Shaner” in the letter to Butler), the first time he mentioned her body being left in the desert, and his statement that “I really feel that eight years is long enough to keep this in my nightmares.” Indeed, that last statement was considered so pivotal that it was both the first line and the last line of the government’s opening argument at trial. Given the importance of this evidence, it more probable than not that the error in admitting it materially affected the verdict.
I would reverse.

. The majority concludes that, even if plea negotiations began on October 2, 1980, Rule 410 still would not exclude Zamastil’s statements to Doss because the rule only applies to statements “made during plea discussions with an attorney for the prosecuting authority.” Fed.R.Evid. 410(a)(4) (emphasis added). But, as other courts have held, it would be overly formalistic to read Rule 410 as only ever applying when the attorney is actually physically present for the negotiations. See, e.g., United States v. Ross, 588 F.Supp.2d 777, 783-84 (E.D.Mich.2008) (“It is the involvement of a government attorney in the negotiation process, not his physical presence at the debriefing, that triggers the application of Rule 410.”) (emphasis in original). When, as here, an Assistant U.S. Attorney demands a proffer of evidence and then an FBI agent shows up four weeks later, it is reasonable for a defendant to conclude that his discussions with the agent are part of that proffer.
Moreover, the holding in Sitton, which the majority relies on, is distinguishable on this point. In that case, the Defendant sought to exclude statements made to the police the day after he was arrested and before there was any involvement by a prosecuting attorney. Sitton, 968 F.2d at 956-57. Indeed, Sitton itself specifically left open the question of whether the principle in Rule 410 applies "to situations in which a law enforcement officer 'with express authority from a government attorney’ enters into negotiations with a defendant.” Id. at 957 (quoting United States v. Lawrence, 952 F.2d 1034, 1037 (8th Cir. 1992)).