956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin Lee CROSS, Defendant-Appellant.
 No. 90-2212.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1992.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Calvin Lee Cross appeals his conviction on six charges of bank robbery and aiding and abetting to which he entered a conditional plea of guilty. Cross contends that the district court should have suppressed certain statements made by him to an FBI agent while he was in state custody on an unrelated charge. For the reasons below, we affirm in part, reverse in part, vacate defendant's conviction, and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 Cross was indicted by a federal grand jury on May 23, 1990, on six charges of bank robbery and aiding and abetting in violation of 18 U.S.C. §§ 2113(a) and 2. In late May 1990, he was arrested by Southgate, Michigan police for an unrelated offense. While Cross was in state custody on the unrelated charge, FBI agent Kenneth Kaiser interviewed him three separate times on June 4, 1990. Cross made incriminating statements to Kaiser during the first and second interviews which he later sought to suppress on the basis that such statements were involuntary.
 
 
 3
 The initial interview took place at 12:15 p.m. at the Southgate Police Department jail. Kaiser testified that prior to asking Cross any questions, he read him his Miranda rights and requested that he sign a waiver of rights form. Cross refused to sign the waiver of rights form, but, according to Kaiser, he acknowledged his understanding of his rights and stated his desire not to have an attorney present. Cross thereupon allegedly made several incriminating statements concerning his relationship with codefendant Michael Crabtree; facts linking him to the banks he and Crabtree were alleged to have robbed; his knowledge of the clothing worn during the robberies; and his prior criminal record. (JA 38-39.) At the close of the first interview, Cross asked Kaiser to contact the United States Attorney to see what kind of deal could be worked out. (JA 40.)
 
 
 4
 The second interview took place that same afternoon at 5:45 p.m. at the Wayne County jail where Cross had been transferred. Kaiser testified that he returned at Cross' request to report on his discussions with the United States Attorney. Kaiser told Cross that the only offer would be a twenty-year sentence. Kaiser testified that he read Cross his Miranda rights a second time and again asked him to sign a waiver form, which Cross declined to do. According to Kaiser, however, Cross again stated he did not want a lawyer. During the course of this interview, Cross allegedly made further incriminating statements concerning his role in the bank robberies. The most damaging of these was Cross' stated belief that he was only forty-five percent responsible for the robberies and that, therefore, he should only receive an eight to ten year sentence. (JA 41-42.) At some point Cross terminated the interview, telling Kaiser that he wanted to speak to his wife before answering any further questions.
 
 
 5
 The third and final interview occurred later that evening at approximately 8:25 p.m. at the Wayne County jail. Kaiser testified that, after advising Cross of his constitutional rights, Cross again refused to sign the waiver. Cross told Kaiser that he had spoken with his wife and had decided not to answer any more questions. The interview ended without Cross making any further incriminating statements.
 
 
 6
 Cross admitted at the suppression hearing that Kaiser read him his Miranda rights from a form prior to the first interview, but he stated that Kaiser merely handed him the form the second and third times and asked him to sign the waiver. (JA 56.) Cross further acknowledged that at the time of the interviews he understood his right to have an attorney present during questioning. (JA 53.) He denied, however, making most of the statements attributed to him and testified that any statements he made were the result of Kaiser suggesting that to do so would help him. (JA 53-54.)
 
 
 7
 Following the evidentiary hearing, the district court held that the statements were not involuntary and denied Cross' motion to suppress. Cross subsequently entered a conditional guilty plea to the six bank robbery charges, reserving his right to appeal the district court's ruling on his motion to suppress statements.
 
 II.
 
 8
 Cross presents essentially two issues for review: (1) whether Agent Kaiser through subtle psychological means coerced him to make the incriminating statements in violation of his constitutional rights,[1] and (2) whether the incriminating statements were made within the context of plea negotiations between Cross and Agent Kaiser.[2] The district court, in denying Cross' motion to suppress, found no evidence of coercion and further determined that no plea negotiations were taking place at the time Cross made the statements.
 
 III.
 
 9
 This court has previously held that in reviewing a district judge's ruling on a motion to suppress statements we need only determine whether the ruling was supported by substantial evidence or whether it was clearly erroneous. United States v. Newman, 889 F.2d 88, 94 (6th Cir.1989) (citations omitted), cert. denied, 110 S.Ct. 2566 (1990). More recently, however, the court has concluded that such a standard is applicable only when there is no allegation of police coercion. United States v. Rigsby, 943 F.2d 631, 635 (6th Cir.1991), petition for cert. filed, (U.S. Nov. 7, 1991) (No. 91-6378). Where an allegation of police coercion is present, a defendant's due process rights are implicated, and, therefore, a de novo review is required. Id. Accordingly, we shall review de novo the district court's finding that Cross' statements were made voluntarily and not the result of any coercion on Kaiser's part.
 
 
 10
 In determining whether a statement is voluntary, we must look at "the totality of the circumstances surrounding the [statement], both the characteristics of the accused and the details of the interrogation, and determine[ ] their psychological impact on an accused's ability to resist pressures to confess." Rigsby, 943 F.2d at 635 (quoting United States v. Brown, 557 F.2d 541, 546 (6th Cir.1977)). A statement must satisfy three conditions to be considered involuntary. First, as a threshold matter, the police activity must be objectively coercive. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). Once this threshold is attained, it must be determined from examining the defendant's state of mind that the coercion was sufficient to overpower his will. Id. Finally, the coercive activity must in fact have caused the defendant's will to be overcome. Id.; Colorado v. Connelly, 479 U.S. 157, 164 1986). See also Rigsby, 943 F.2d at 635 and Newman, 889 F.2d at 95.
 
 
 11
 Cross argues that Kaiser was able through subtle psychological means to coerce the inculpatory statements by giving him hope that by making the statements he would obtain some leniency. He states that he was susceptible to this psychological pressure because he had recently married, had a child and was facing the threat of a long prison term.
 
 
 12
 Cross cites United States v. Tingle, 658 F.2d 1332 (9th Cir.1981) for the proposition that subtle psychological pressure may suffice to overcome a suspect's will and render involuntary any subsequent statement. As a general proposition, this is doubtlessly true. The facts in Tingle, however, are dissimilar to the facts of this case. In Tingle, the interrogator warned the suspect that she faced a long prison term; that she had a lot at stake; that her cooperation or lack of cooperation would be communicated to the prosecutor; and that she might not see her two year old child for quite a while. Id. at 1336. Furthermore, Tingle was noticeably shaking throughout the interrogation and cried continuously for at least ten minutes before confessing. Id. at 1334. Except for the fact that Kaiser told Cross that he faced a twenty-year sentence, there is no similarity between the circumstances of the interrogation involved in Tingle and the questioning of defendant by Kaiser in the present case.
 
 
 13
 Cross also cites United States v. Gorayska, 482 F.Supp. 576 (S.D.N.Y.1979) and McLallen v. Wyrich, 498 F.Supp. 137 (W.D.Mo.1980) for his argument that an implied promise of a better deal may constitute the coercion necessary to render a confession involuntary. Neither of these cases, however, supports Cross' contention under the present circumstances. In Gorayska, the court actually rejected an argument that a statement induced by a promise renders the statement involuntary, at least where the express terms of the promise are carried out. 482 F.Supp. at 583-84. And while the court in McLallen found a confession to have been unconstitutionally admitted, it premised its ruling on the fact that the prosecutor made constant and repeated statements to the suspect that he would be better off to sign the confession.
 
 
 14
 After examining the totality of the circumstances surrounding Cross' statements, we discern no basis for a finding that Kaiser's activity was objectively coercive. It is undisputed that Kaiser was the only agent present during Cross' interrogations; that Kaiser did not use force or the threat of force or display any weapon during the interviews and made no promises to Cross in return for his cooperation. (JA 44.) It is further uncontroverted that Kaiser returned a second and third time at Cross' own request. Finally, Kaiser's statement to Cross that he faced a twenty-year sentence was also made pursuant to Cross' admitted request that the agent check out a deal with the United States Attorney.
 
 
 15
 Since a finding that the law enforcement activity was objectively coercive is a necessary predicate to establishing a statement as involuntary, we need go no further. In reviewing the other necessary conditions, however, we note our agreement with the district court that the information relayed by Kaiser to Cross that he faced a twenty-year sentence was not sufficient in itself to overcome Cross' will, and that it is very unlikely that such information actually caused Cross' will to be overcome and caused him to make the inculpatory statements that Cross seeks to suppress.[3] Therefore, we conclude, as did the district court, that such statements were voluntary.
 
 IV.
 
 16
 Cross' second issue presented for review is that his statements should be barred because they were made in the context of plea bargaining. The issue must be considered in light of Rule 11(e)(6) of the Federal Rules of Criminal Procedure. This Rule provides in relevant part that evidence of "any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn is not admissible against the defendant." Fed.R.Crim.P. 11(e)(6)(D) (1988).[4] The trial judge's determination that no plea discussions took place is a finding of fact, and defendant, therefore, has the burden of showing that the finding is clearly erroneous. United States v. Aponte-Suarez, 905 F.2d 483, 493 (1st Cir.1990), cert. denied, 111 S.Ct. 531 (1990). As a preliminary matter, however, we must decide whether the Rule even applies in Cross' case since his discussions did not take place directly with the United States Attorney or an Assistant United States Attorney, but, instead, were with an investigating law officer.
 
 
 17
 Prior to the Rule's amendment in 1979, it excluded "statements made in connection with, and relevant to" any of the foregoing pleas or offers."[5] Some courts, including this one, broadly construed the protection given by that language to require the exclusion of an attempt by a defendant to open plea bargaining discussions with a law enforcement officer. United States v. Brooks, 536 F.2d 1137 (6th Cir.1976); United States v. Herman, 544 F.2d 791 (5th Cir.1977). These and similar cases prompted the 1979 amendment which requires that for the Rule to be applied the statement must be "made in the course of plea discussions with an attorney for the government." See Fed.R.Crim.P. 11(e)(6) Advisory Committee Notes--1979 Amendment. By relating the statements to "plea discussions" rather than an "offer to plead," however, the amendment ensures that "even an attempt to open plea bargaining [is] covered under the same rule of inadmissibility." See id., citing Brooks.
 
 
 18
 Since the 1979 amendment, courts generally have not applied the Rule to statements that might otherwise be considered as plea bargaining statements, because they were not made in the course of plea discussions "with an attorney for the government." United States v. Sebetich, 776 F.2d 412, 422 (3d Cir.1985), cert. denied, 484 U.S. 1017 (1988); United States v. Keith, 764 F.2d 263, 265-66 (5th Cir.1985); Aponte-Suarez, 905 F.2d at 493.[6]
 
 
 19
 A realistic reading of the amendment, however, would not require that the statements in question must always be made in the physical presence of an attorney for the government for the Rule to be applied. As the Court noted in United States v. Serna:
 
 
 20
 The Notes of the Advisory Committee on Rules to the 1979 amendments indicate that the requirement of an attorney's presence was added to prevent the exclusion of statements made to government agents when there had been no participation of a government attorney. See, e.g., United States v. Herman, 544 F.2d 791 (5th Cir.1977). We think the rule can be fairly read to require the participation of a government attorney in the plea discussions, but not necessarily his physical presence when a particular statement is made to agents whom the attorney has authorized to engage in plea discussions.
 
 
 21
 799 F.2d 842, 849 (2d Cir.1986), cert. denied, 481 U.S. 1013 (1987). See also United States v. Swidan, 689 F.Supp. 726, 728 (E.D.Mich.1988).
 
 
 22
 We adopt the view that participation by the government attorney in plea negotiations is sufficient to trigger the protection of Rule 11. While statements made by a defendant to law enforcement officers during the investigation stage, without more, are not protected by the Rule, statements made by a defendant to a law enforcement officer during a plea bargaining process in which the government attorney participates should be protected by the Rule. Otherwise, a law enforcement officer could act, as in the present case, in the role of an intermediary between a defendant and the government attorney in conducting plea negotiations and yet those discussions would not be protected by the Rule. In the present case it is clear that the government attorney, in consultation with agent Kaiser, did participate in causing Kaiser to relay to defendant the "offer" of twenty years. The government attorney's participation, through Kaiser, was adequate to trigger the application of Rule 11. The question remains, however, as to whether the discussions between Kaiser and defendant constituted "plea discussions," a question that is factual in nature.
 
 
 23
 Prior to the 1979 amendment, a number of courts had adopted a two prong test for determining whether a discussion should be characterized as a plea negotiation for purposes of Rule 11 and Evidence Rule 410. There had to be a subjective expectation of the defendant that he was negotiating a plea and that expectation had to be objectively reasonable. United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir.1978) (en banc); United States v. O'Brien, 618 F.2d 1234, 1240-41 (7th Cir.), cert. denied, 449 U.S. 858 (1980); United States v. Doe, 655 F.2d 920, 925 (9th Cir.1980). We see no reason why this approach does not remain a correct approach even after the 1979 amendment, and at least two district courts in this circuit have utilized it in post-amendment cases. Swidan, 689 F.Supp. at 728; United States v. Gentry, 525 F.Supp. 17, 19 (M.D.Tenn.1980). Cf. 2 J. Weinstein & M. Berger, Weinstein's Federal Evidence, p 410 at 410-60 (1986).
 
 
 24
 In the present case, the district court held that "the facts and circumstances surrounding Agent Kaiser's contact with the Assistant United States Attorney did not resemble a plea bargaining negotiation." The district court concluded that all that Kaiser had done was to find out, at defendant's request, what sentence defendant would be facing if he pled guilty, and that Kaiser found out that under the statute and sentencing guidelines defendant was facing a twenty-year sentence. The trial court found Kaiser to be a credible witness, and we fully accept that determination. It is Kaiser's own testimony, however, that requires us to conclude that the trial court's characterization of the discussions was clearly erroneous. Kaiser testified that:
 
 
 25
 He (defendant) had asked me the first time after the first interview, he said to go back and contact the United States Attorney, and see what kind of a deal could be worked out and then he would talk to me further. I said do you want me to come back after I talk to her, and he said yes. So I came back.
 
 
 26
 (JA 40.)
 
 
 27
 With regard to the second interview, Kaiser testified that:
 
 
 28
 I advised him of what the United States Attorney's offer was ...
 
 
 29
 ... He didn't feel that 20 years was a good offer, because he was only 45 percent involved and he figured that an eight to ten year offer was a better idea of what he felt he should get.
 
 
 30
 (JA 41-42.) Again, on cross-examination, Kaiser testified that:
 
 
 31
 ... The first time when the subject of working out a deal came up, the interview was terminated at that time. I came back on the second occasion after I had talked to the United States Attorney. I told him what the deal was, what the offer was, and then he started to talk the second time.
 
 
 32
 Q. What was the offer?
 
 
 33
 A. Twenty years.
 
 
 34
 (JA 48.) At oral argument, government counsel conceded that defendant likely manifested at that time a subjective belief he was negotiating a plea, and there is little doubt that Cross' expectation that he was negotiating a plea was objectively a reasonable expectation. He terminated the first interview, after giving Kaiser considerable information regarding his involvement in the robberies, by asking Kaiser to contact the United States Attorney and see "what kind of a deal could be worked out." (JA 40.) When Kaiser complied with this request and returned to the defendant at the second interview, Kaiser "advised him of what the United States Attorney's offer was." (JA 41.) It was in direct response to this "offer" that the defendant reacted by stating, "he didn't feel that 20 years was a good offer, because he was only 45 percent involved; and he figured that an eight to ten year offer was a better idea of what he felt he should get." (JA 41-42.)
 
 
 35
 It may well be accurate that the twenty-year sentence was mandated in this case by the applicable statute and sentencing guidelines. It may also be correct that defendant was aware that this was "the only offer that could be worked out." (JA 48.) None of this, however, changes the inescapable conclusion that defendant believed he was engaging in plea negotiations with the United States Attorney, that his belief was a reasonable one and that his response to the offer of the United States Attorney was part and parcel of those negotiations. Defendant's statement in response to the offer of the United States Attorney, therefore, should have been suppressed.
 
 V.
 
 36
 For the foregoing reasons, the judgment of the district court is affirmed with respect to the denial of defendant's motion to suppress his statements made during the first interview with Kaiser but reversed with respect to the denial of defendant's motion to suppress his statement in the second interview that "he didn't feel that 20 years was a good offer, because he was only 45 percent involved, and he figured that an eight to ten year offer was a better idea of what he felt he should get."
 
 
 37
 Accordingly, the conviction of defendant on his conditional plea of guilty is vacated, and this case is remanded to the district court for the purpose of permitting defendant to reenter a plea of not guilty and for further proceedings consistent with this decision.
 
 
 
 *
 The Honorable John D. Holschuh, Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 In addition, Cross has also argued that his refusal to sign the waiver of rights form barred any further interrogation by Agent Kaiser. The federal courts of appeals, however, are unanimous in holding that such a refusal does not preclude questioning if the person in custody has in fact waived his rights. See North Carolina v. Butler, 441 U.S. 369, 375 n. 5 (1979); United States v. House, 939 F.2d 659, 662-63 (8th Cir.1991); United States v. Boon San Chong, 829 F.2d 1572, 1574 (11th Cir.1987); United States v. Kord, 836 F.2d 368, 374-75 (7th Cir.1988), cert. denied, 488 U.S. 824 (1988); United States v. Vaughn, 496 F.2d 622 (6th Cir.1974); and United States v. Coultor, 498 F.2d 412, 413 (6th Cir.1974), cert. denied, 419 U.S. 898 (1974)
 
 
 [2]
 Although appellant in his brief does not explicitly raise this second issue outside the context of coercion, we conclude that the issue is properly before us for purposes of his appeal from the district court's order. In his brief filed with the district court on August 6, 1990, defendant argued that "Federal Rules of Criminal Procedure 11(e)(6) prohibits use of statements made during plea bargaining." In its supplemental brief filed with the district court on August 7, 1990, the government argued at length that Cross' discussions with the FBI agent did not constitute plea negotiations. Thus, the issue was squarely before the district court which found that "no plea negotiations were taking place." In the oral argument on appeal, the issue was again debated, without objection, and it is clear to us that the issue of whether defendant's statements should have been suppressed as part of a plea bargaining process has been submitted to us for decision on appeal from the district court's order
 
 
 [3]
 We also note, parenthetically, that virtually all of Cross' inculpatory statements were made prior to Cross' inquiry as to what kind of deal could be worked out and Kaiser's response at the following interview that he faced a twenty-year sentence
 
 
 [4]
 Rule 410(4) of the Federal Rules of Evidence by its own terms is also controlling, but since its language conforms and is substantially identical to Fed.R.Crim.P. 11(e)(6), our analysis will focus on the latter
 
 
 [5]
 The phrase "foregoing pleas or offers" referred to "a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime." Fed.R.Crim.P. 11(e)(6) (1976)
 
 
 [6]
 As the Advisory Committee Notes points out, statements made to a law enforcement officer generally are not covered by the per se rule of 11(e)(6), but instead are "resolved by that body of law dealing with police interrogations." See Fed.R.Crim.P. 11(e)(6) Advisory Committee Notes--1979 Amendment