992 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kedar A. O'NEAL, Defendant-Appellant.
 No. 92-5995.
 United States Court of Appeals, Sixth Circuit.
 April 28, 1993.
 
 Before: KENNEDY, MILBURN, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Kedar A. O'Neal appeals his jury convictions of intentionally possessing controlled substances in violation of 18 U.S.C. § 841(a)(1) and for possessing a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c). On appeal, defendant raises the following issues: (1) whether the district court erred in denying his motion to suppress evidence, (2) whether the district court erred in not declaring a mistrial because of a juror's relationship with a government witness, (3) whether the evidence presented at trial was sufficient to sustain his conviction, and (4) whether the district court erred in allowing the government to introduce evidence of his attempts at cooperation following his arrest. For the reasons that follow, we affirm.
 
 I.
 A.
 PROCEDURAL BACKGROUND
 
 2
 On March 27, 1991, a federal grand jury, sitting in Memphis, Tennessee, returned a three-count superseding indictment charging defendant with unlawfully possessing with intent to distribute approximately seven grams of cocaine base and approximately 11 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), and with one count of possession of firearms in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c).
 
 
 3
 Also on March 27, 1991, defendant filed a motion to suppress evidence. The matter was referred to a magistrate judge. After new counsel was appointed to represent defendant, an identical motion to suppress was refiled on April 22, 1991. An evidentiary hearing was held before the magistrate judge on May 1, 1991. On August 8, 1991, the magistrate judge recommended that the motion to suppress be denied, finding that exigent circumstances existed which made the "knock and announce rule" of 18 U.S.C. § 3109 inappropriate and that the government had demonstrated by a preponderance of the evidence that the defendant's statements were voluntarily made after he received Miranda warnings. After de novo review of the magistrate judge's recommendations, in light of defendant's timely objections, the district court adopted the magistrate judge's recommendations and denied the motion to suppress.
 
 
 4
 A jury trial commenced on September 9, 1991. On September 12, 1991, the jury returned a verdict of guilty as to all three counts charged in the indictment. On February 21, 1992, defendant was sentenced to 92 months on counts one and two with the sentences to run concurrently and 60 months on count three with the sentence to run consecutively to counts one and two. Additionally, defendant was sentenced to four years of supervised release. Thereafter, on March 23, 1992, defendant filed an untimely notice of appeal. On June 23, 1992, this court sua sponte dismissed the appeal; however, our order also provided that the district court could reinstate the appeal if it found excusable neglect for the untimely filing of the notice of appeal. Defendant filed a motion to extend the time for filing a notice of appeal on June 26, 1992. On June 29, 1992, defendant filed a second notice of appeal with the district court. Subsequently, on July 2, 1992, the district court granted defendant's motion to extend time to file a notice of appeal, resulting in the reinstatement of defendant's first appeal.
 
 B.
 FACTS
 
 5
 Defendant was arrested on September 6, 1990, when Memphis, Tennessee, Police Officers executed a search warrant for a duplex located at 2976 Grenadier Cove in Memphis. The following testimony was presented at the suppression hearing.
 
 
 6
 Upon their arrival at the duplex, Sergeant Charles Huff and other officers went to the front door, announced their presence, and then heard what sounded like a person running inside the house. Consequently, Officer Michael Kitsmiller kicked open the front door of the duplex.
 
 
 7
 After entering the duplex, Kitsmiller observed defendant run down the hallway toward a rear bedroom, observed what he believed to be a gun in defendant's hand, and yelled "gun" in order to inform the other officers that defendant was armed. This resulted in Officers Huff, Kitsmiller and Berryhill's giving chase and following defendant into the rear bedroom.
 
 
 8
 Once inside the bedroom, defendant jumped onto a bed with his hands located underneath his body. Believing that he was armed, the officers struggled with defendant, lifted him from the bed, and discovered a handgun lying on the bed in the area from which he had just been lifted. Defendant was handcuffed and taken to the front of the duplex while the officers searched for drugs.
 
 
 9
 When drugs were found, defendant was told he was under arrest and was advised of his Miranda rights by Officer Mary Johnson. Officer Johnson read from a form telling defendant:
 
 
 10
 You are under arrest and will be charged with possession of a controlled substance with intent to manufacture, deliver or sell to wit: Cocaine and marijuana.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 And, therefore, it is my duty as an officer to advise you that you do not have to make a statement. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to have a lawyer, either one of your own choice or court appointed if you cannot afford one. And talk to your lawyer before answering any questions and to have him with you during questioning if you wish.
 
 
 14
 J.A. 78-79. When defendant was asked if he understood each of the rights that had been explained to him, he responded, "Yes."
 
 
 15
 Subsequently, Officer Johnson along with Sergeant Ballard obtained a statement from defendant. After the statement was reduced to writing, defendant's handcuffs were removed; he initialled the first page of the statement and signed the second page. Defendant was told that if he successfully set up some narcotics deals, the police would write a letter to the prosecutor on his behalf but that there were no guarantees. At this time, defendant told the officers he was willing to contact other drug dealers and that all of the drugs in the house were his.
 
 
 16
 Once defendant had agreed to cooperate, Lt. Gates, the supervising officer, was called to the scene. Defendant rode with Gates to the North Precinct of the Memphis Police Department, remaining there about two or three hours. During this time, defendant made phone calls and also pointed out certain houses to Officer Berryhill as locations from which he had obtained drugs.
 
 
 17
 At the suppression hearing, defendant and his sister, Denita O'Neal, also testified. Ms. O'Neal testified that she and her children resided at the duplex on Grenadier Cove and her brother did not. She testified that she was not present when the police arrived and that neither she nor her children had placed any drugs inside the home. She further testified that she owned a handgun, which she kept under a mattress in the bedroom.
 
 
 18
 Defendant testified that he was using the telephone inside the duplex when the officers came through the door. He acknowledged running to the back bedroom after the officers entered; however, he claimed that the officers had their pistols drawn, and he ran to the back bedroom and dove under the bed because he did not know that they were the police.
 
 
 19
 Defendant testified that the police handcuffed him and struck him in the face after finding a gun on the bed near another individual, Keith Person. According to defendant, the officers pulled his hair, ordered him off the floor, and asked him where the "dope" was. Defendant testified that the police searched the duplex after he was taken to the living room. He testified that he was questioned without being told about his right to remain silent and his right to have an attorney present. Defendant stated that after finding drugs, the officers hit him and told him he would have a rough ride to jail.
 
 
 20
 On cross-examination, defendant admitted that he initialled and signed the written statement taken by Officer Johnson; however, he denied receiving the advice of his rights contained in the statement. Defendant also asserted that he did not understand why he was being arrested. He further denied that he ever told the officers, or led them to believe, that he wanted to cooperate with them.
 
 
 21
 At trial, the proof was substantially similar to that presented during the suppression hearing. Officer Kitsmiller testified that he and other officers went to 2976 Grenadier Cove in Memphis, Tennessee, to execute a search warrant on September 6, 1990. On arrival, the officers, who were wearing raid jackets, knocked on the door and announced their presence. Officer Kitsmiller testified that he heard running inside the house, kicked open the door, and saw defendant running with a pistol in his right hand. Officer Kitsmiller yelled out, "gun," and the officers chased defendant into the rear bedroom where another individual was sitting on the bed. Defendant jumped on the bed and the officers struggled with him in order to recover a pistol found underneath defendant. Officer Kitsmiller testified that after the recovery of the pistol, defendant was taken to the living room so that the officers could conduct a search of the duplex.
 
 
 22
 Officer Huff also testified that he went with other officers to 2976 Grenadier Cove to execute a search warrant. The police knocked and announced their presence; they were wearing raid jackets emblazoned with three-inch letters across the front reading "Police." Officer Huff stated that Officer Kitsmiller kicked in the front door after they heard what sounded like a person running inside the house and failed to receive a response to their announcement. Like Officer Kitsmiller, Officer Huff testified that defendant had a gun, ran down the hall, jumped on the bed, and struggled with the officers while they tried to get the gun from underneath him. Officer Huff also confirmed that defendant was taken to the front of the duplex so that it could be searched. Furthermore, Officer Huff testified that he found rock cocaine and powdered cocaine inside a closet and verified a photograph of two plastic bags containing the cocaine he found in the closet.
 
 
 23
 Following the conclusion of Sergeant Huff's testimony, Juror Barker, of his own accord, came forward and informed the court that he had known Sergeant Huff for twenty-five years and that at one point they attended the same church and were the best of friends. Juror Barker also stated that he had no contact with Huff during the past six years and that twenty years had passed since they had a close friendship. Furthermore, Barker stated that he could disregard his prior relationship with Huff in considering Huff's testimony and that his relationship with Huff would not influence his ability to decide the case.
 
 
 24
 Memphis Police Officer Frank Bell was the next witness. He testified that he found a small rocking tube and a bottle of "cut" inside of an air vent. Officer Bell further testified that based upon his experience, "cut" was a white powdery substance which is usually mixed with cocaine to give the appearance of a larger quantity, and that a rocking tube is used to cook up crack cocaine.
 
 
 25
 Officer Mary Johnson testified that she obtained a statement from defendant, and she read the entire statement for the jury. Defendant's statement related that he had brought the drugs to 2976 Grenadier Cove in a 1975 Datsun on September 2, 1990. He admitted being in the cocaine-selling business and selling cocaine during the two months preceding the search. He further stated that no other person was responsible for storing or selling drugs at the Grenadier Cove address, acknowledged that there was a gun on the bed, and admitted that he jumped on the bed.
 
 
 26
 Officer Sammy Ballard then testified. He stated that he saw Officer Huff knock on the door, observed Officer Kitsmiller kick in the door, and heard Kitsmiller yell out that defendant had a gun.
 
 
 27
 Ballard testified that once inside, he and the other officers ran down the hall after defendant and struggled with him after he jumped on the bed with his arms under his body. Officer Ballard said that after defendant was handcuffed, he was taken to the living room while the duplex was searched. During the search, Officer Ballard found a small amount of controlled substance, a set of scales, and a rocking tube, which he explained was usually used to manufacture crack cocaine. Office Ballard testified, based upon his experience with the Organized Crime Unit, that crack cocaine is commonly known as rock cocaine, that a rock normally weighs one-tenth of a gram, and a rock generally costs twenty dollars. Officer Ballard also testified that cocaine powder is generally sold in blades and indicated that a blade costs approximately twenty-five dollars and weighs approximately three-tenths of a gram.
 
 
 28
 Lt. Rufus Gates testified that he was called to the Grenadier Cove address by Officer Kitsmiller after defendant was arrested. Officer Gates stated that he took defendant to the Memphis Police Department's North Precinct after he agreed to cooperate with the police. During the trip to the precinct, Officer Gates said he reiterated defendant's rights to him, and defendant indicated that he understood his rights. Officer Gates stated that defendant appeared to be slightly nervous but did not appear to be frightened or visibly shaken.
 
 
 29
 At trial, defendant testified in his own behalf. He stated that he was beaten by the officers and that his statement was made as a result of threats, force, coercion, and duress. Defendant said that he was never advised of his Miranda rights and asserted that he never told the officers that he wished to make a statement. Defendant also denied that he ever had cocaine in his possession, denied he ever told the officers he would cooperate with them, denied that he ever pointed out houses to the officers, and denied that he ever "beeped" any drug dealers. In addition, defendant's sister testified that the gun found inside the duplex belonged to her.
 
 II.
 A.
 
 30
 Defendant argues that the district court erred in overruling his motion to suppress, particularly with respect to the voluntariness of his statements to the police at the time of his arrest. Defendant asserts that as he was in handcuffs and confronted with a room full of police with their guns drawn, his confession is highly suspect and not voluntary. Determining the voluntariness of a statement requires an analysis of the "totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). This court has stated that the test for voluntariness is whether the confession was the product of free and rational choice. United States v. Murphy, 763 F.2d 202 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986). Factors to be taken into account include, but are not limited to, age, lack of education, low intelligence, emotional and physical state at the time of the confession, lack of advice of constitutional rights, length of detention, isolation from family and friends, repeated and prolonged nature of the questioning, who initiated the questioning, use of physical punishment, and the inherent coerciveness of the setting in which the confession was given. Schneckloth, 412 U.S. at 226. Moreover, a confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity, (2) the coercion in question was sufficient to overbear the will of the accused, and (3) the will of the accused was in fact overborne because of the coercive police activity in question. See McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989).
 
 
 31
 Defendant claims that he was 19 years old and was repeatedly told by officers that he would do "ten years for one day." Consequently, he asserts that his state of mind rendered his statements involuntary. However, all of the officers testified that no threats, duress, or coercion were used to obtain statements from defendant. Defendant also testified that he was hit by the officers; however, the officers testified that Officer Kitsmiller hit defendant once in the shoulder while struggling with him for the gun but that defendant was not otherwise struck. Moreover, the magistrate judge observed all the witnesses and concluded that the officers' testimony was more credible and that the motion to suppress should be denied. The district court reviewed the magistrate judge's recommendation de novo and adopted it in its entirety. Given the great deference accorded to factual findings based upon credibility determinations, see Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985), defendant's confession was voluntary as it was not the product of coercive police activity.
 
 
 32
 Defendant also argues that the evidence seized at the duplex should be suppressed because the officers violated the "knock and announce rule" contained in 18 U.S.C. § 3109 when they entered the duplex. 18 U.S.C. § 3109 provides:
 
 
 33
 The officer may break open any outer of inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
 
 
 34
 In this case, the officers were state law enforcement officers executing a state search warrant; however, 18 U.S.C. § 3109 would apply because it is merely a codification of the common law of unannounced entry. United States v. Francis, 646 F.2d 251, 255 (6th Cir.), cert. denied, 454 U.S. 1082 (1981). The conditions for a forcible entry under § 3109 are: (1) the announcement of authority, (2) the announcement of purpose, and (3) the grounds for believing entry has been refused. United States v. Murrie, 534 F.2d 695, 698 (6th Cir.1976).
 
 
 35
 In this case, the magistrate judge concluded that:
 
 
 36
 these officers technically violated the provisions of § 3109. The proof is sufficient to show that they announced their authority, but there is no proof to indicate that they announced the purpose of their wish to enter.
 
 
 37
 J.A. 27. However, the magistrate judge also concluded that exigent circumstances were present in this case which would justify a forcible entry without an announcement of purpose for the entry. The Fourth Amendment forbids the unannounced forcible entry of a dwelling in the absence of exigent circumstances. See Francis, 646 F.2d at 258. The burden of proof of exigent or exceptional circumstances, which would justify a deviation from the Fourth Amendment requirement to "knock and announce," is on those seeking the advantage of the exception. See Murrie, 534 F.2d at 698.
 
 
 38
 As earlier stated, the district judge adopted the report and recommendation of the magistrate judge which concluded that the government had met its burden of proof of establishing exigent circumstances because the officers were searching for drugs which may be quickly flushed down a toilet or otherwise disposed of so as to destroy evidence. Furthermore, all of the officers testified that after they knocked, they heard footsteps or the sound of running towards the rear of the duplex. Based upon their experience, they concluded that this running indicated either the possibility of destruction of evidence, the fleeing of a suspect, or the effort to obtain a firearm. As was stated above, the district court found the officers' testimony to be credible, a finding which is accorded great deference on appeal. Furthermore, when the officers burst through the door of the duplex, they did see defendant running towards the rear of the duplex with a pistol in his hand, and they were required to struggle with defendant over the gun. Among the exigent circumstances which render strict compliance with the "knock and announce" rule inappropriate and imprudent are concerns for the safety of the police and the need to preserve easily disposable narcotics evidence. See United States v. Nabors, 901 F.2d 1351, 1354 (6th Cir.), cert. denied, 111 S.Ct. 192 (1990). Since both of these concerns were implicated in this case, exigent circumstances justified the officers' forcible entry in this case.
 
 
 39
 Accordingly, since the entry of the police into the duplex was authorized by a valid search warrant and was not violative of the Fourth Amendment, and since a preponderance of the evidence demonstrates that defendant's confession was voluntary and was made following the giving of Miranda warnings by the police, the district court did not err in not suppressing this evidence.
 
 B.
 
 40
 Defendant also asserts that the district court erred in failing to grant a mistrial based upon Juror Barker's disclosure that he was acquainted with Sergeant Huff, a prosecution witness, after Sergeant Huff had testified. A review of the record reveals no indication that defendant either moved for a mistrial or objected to Juror Barker's remaining on the jury. Thus, it would appear that defendant has not preserved this issue for appellate review.
 
 
 41
 However, assuming that an objection had been made, the district court's failure to remove Juror Barker would not constitute an abuse of discretion warranting reversal of defendant's conviction. Juror Barker came forward of his own volition and informed the court that he knew Sergeant Huff and that they were close personal friends twenty years ago. However, the juror also stated that he had not had any contact with Huff in the last six years. More importantly, Juror Barker stated that his past relationship with Huff would not prejudice him, that he could disregard the past relationship in considering the testimony, and that his prior relationship with Huff would not influence his ability to decide the case. In this case, Huff's testimony was mainly cumulative of the testimony of the other police officers. Further, Juror Barker did state that his past relationship with Huff would not interfere with his ability to render a verdict solely on the evidence presented. See United States v. Chambers, 944 F.2d 1253, 1262 (6th Cir.1991), cert. denied, 112 S.Ct. 1217 and 112 S.Ct. 1680 (1992). Accordingly, the district court did not abuse its discretion and did not commit reversible error by not declaring a mistrial.
 
 C.
 
 42
 Defendant also argues that insufficient evidence was presented at the trial to support his conviction, particularly with respect to the firearms conviction.
 
 
 43
 The standard of review to be applied to a claim of insufficient evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). In making such a determination, a reviewing court must also resolve all reasonable inferences which may be drawn from the evidence in the prosecution's favor. United States v. Martin, 897 F.2d 1368, 1373 (6th Cir.1990). Moreover, a finding of guilt may be based entirely on circumstantial evidence, and such evidence need not remove every reasonable hypothesis except that of guilt. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984).
 
 
 44
 With regard to defendant's drug convictions, there clearly was sufficient evidence, both direct and circumstantial, presented at the trial to permit a rational juror to find defendant guilty. As to his firearms conviction, however, defendant argues that his sister testified that the gun was hers and that she kept it under the bed onto which defendant jumped after the police entered the home. Defendant insists that since the police said that the gun was found on the bed under defendant, this is consistent with his sister's testimony that the gun was under the mattress, and, therefore, it cannot be said that defendant possessed the gun in connection with the drug transaction. Appellant's brief, p. 13. Based upon the record, this argument is meritless. Sufficient evidence was clearly presented at the trial to support defendant's firearms conviction.
 
 D.
 
 45
 Defendant argues that the district court erred in permitting the government to introduce evidence of his attempts at cooperation following his arrest. Defendant argues that these "acts" performed in an attempt to cooperate with the police amount to a "statement" within the meaning of the Fifth Amendment, and, thus, the district court would have to determine that the acts were voluntary and not the product of coercion or threats by the officers.
 
 
 46
 However, assuming that these acts performed by defendant during his attempt to cooperate with the police are "statements" protected by the Fifth Amendment, the district court determined this issue following the evidentiary hearing on the motion to suppress. Thus, defendant's claimed error is meritless.
 
 
 47
 Defendant also argues that his attempts to cooperate with the police were plea negotiations, and, therefore, evidence of his acts performed in furtherance of his efforts to cooperate should have been excluded. Rule 11(e)(6) of the Federal Rules of Criminal Procedure provides in relevant part that evidence of "any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is not admissible against the defendant. Fed.R.Crim.P. 11(e)(6)(D). Likewise, Federal Rule of Evidence 410 limits the inadmissibility of statements made during the course of a plea discussion to "plea discussions with an attorney for the prosecuting authority...." Fed.R.Evid. 410(4). This rule can be fairly read to apply to statements made to a government attorney during the course of plea discussions or to an agent whom the government attorney has authorized to engage in plea discussions. United States v. Serna, 799 F.2d 842, 849 (2d Cir.1986), cert. denied, 481 U.S. 1013 (1987). See also United States v. Swidan, 689 F.Supp. 726, 728 (E.D.Mich.1988).
 
 
 48
 In this case, the arresting officers told defendant that if he agreed to cooperate, they would write a letter to the prosecutor on his behalf but that there would be no guarantees. Neither the prosecutor nor any another attorney was present. Thus, assuming that defendant had a subjective belief that this was some sort of plea negotiation, that belief would not be objectively reasonable. Specifically, it would not be objectively reasonable to believe that the police had been authorized to negotiate a plea on behalf of the prosecutor if they could not guarantee results. Therefore, the statements made by defendant after he agreed to cooperate with police were not inadmissible as statements made during the course of a plea bargain.
 
 
 49
 Finally, defendant argues that the testimony as to his acts and statements after he agreed to cooperate with the police should have been excluded under Fed.R.Evid. 403 as more prejudicial than probative. The admission of relevant, potentially prejudicial evidence is within the sound discretion of the trial court. United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979). Moreover, in reviewing a decision of a trial court on this issue, this court must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. Id.
 
 
 50
 In this case, the district court did not abuse its discretion in admitting this testimony. The testimony was introduced to rebut defendant's testimony that he had no knowledge of drug dealing. The testimony in fact showed that defendant had knowledge of drug dealing and had pointed out drug houses to police. Accordingly, we conclude that the evidence was more probative than prejudicial.
 
 III.
 
 51
 For the reasons stated, the judgment of the district court is AFFIRMED.