UNITED STATES of America,
Plaintiff,

v.

Bryan ROSS, Defendant.

Case No. 07–20513.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 25, 2008.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ROSS'S MOTION IN LIMINE

DAVID M. LAWSON, District Judge.

Defendant Bryan Ross is charged in seven counts of an indictment alleging conspiracy and uttering counterfeit securities arising from a scheme to steal motor vehicles by using counterfeit bank checks to make purchases from individual sellers. The matter is before the Court on the defendant's motion *in limine* to prevent the government from introducing at trial statements Ross allegedly made on two separate occasions. The government opposes the motion, although it is willing to make certain concessions to limit the use of the statements. The Court heard oral argument on November 24, 2008, and now finds that the motion should be granted in part.

### I.

The first set of statements allegedly were made in the summer of 2003, sometime after Ross was arrested on a complaint charging him with bank fraud on July 3, 2003. Ross contends that those statements were made as part of plea negotiations, and therefore they are inadmissible under Federal Rule of Evidence 410. The government takes the position that the statements were made during a proffer session that was preliminary to plea negotiations, and therefore Rule 410 does not apply.

The record on exactly how the meeting came together is quite sketchy. It appears that after Ross's arrest, an attorney from the Federal Defender Office was appointed to represent him. A few days after that, July 8, 2003, defendant Ross, his attorney Jill Price, and Special Agent Darren Dodd gathered for a meeting. The

Craig A. Weier, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

government contends that Secret Service agent Steven Skipworth was also present; Ross claims that Blondell Morey, an attorney in the United States Attorney's Office, was present, although "[t]he best recollection of Ms. Price is that Blondell Morey was not present at the meeting." Def.'s Reply at 2. Everyone agrees that Ross was not in custody or under arrest during this meeting.

Either before the meeting or shortly afterward, AUSA Morey presented Ross and Ms. Price with a so-called *Kastigar* letter, as is the custom in this district, used to avoid the problems described by the Supreme Court in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The letter was signed by counsel for the government, Mr. Morey. The letter reads, in part:

> As you know, a meeting between your client, you and federal law enforcement agents will be scheduled for the purpose of receiving a proffer regarding certain subjects known by your client. The provisions of this letter are necessary to avoid the necessity of a *Kastigar* hearing at which the government would have to prove that its evidence was not tainted by a statement made by your client in this proffer discussion. In order to eliminate this necessity as well as any misunderstanding about the ground rules of this meeting, the undersigned parties acknowledge the following understandings:
>
> . . .
>
> Subject to paragraph (4) below, no statement made by you or your client during this proffer discussion will be offered in the government's case-in-chief in a criminal prosecution of your client. However, the government may use such statements for the purpose of cross-examination should your client testify in such a case, or for the purpose of a

rebuttal case against your client. This provision is necessary in order to insure that your client does not abuse the opportunity for this proffer discussion and future cooperation by making false statements either at the discussion or at a trial.

> The government may make derivative use of, and may pursue any investigative leads suggested by any information provided by you or your client and may use any information so derived as evidence against your client without restriction.
>
> . . .
>
> The above-stated provisions act as a modification, and express waiver, of F.R.E. 410 and F.R.Crim.P. 11.
>
> In the event that your client knowingly makes a false statement or that your representations concerning your client's role are not substantially accurate, the promises by the government in this letter are null and void, and there will be no restrictions on how any information generated by this agreement can be used.

Def.'s Mot., Ex. B. The letter was dated July 14, 2003. Under most circumstances, this letter would establish the contractual rights of the parties to the use at trial of statements made at the meeting. However, there is no evidence that the letter was ever counter-signed by Ross or Ms. Price. The copy of the letter in Ms. Price's file bears Mr. Morey's signature and none other; the government cannot locate its copy of the letter.

According to the government, Ross made some inculpatory statements at this meeting, memorialized in a police report:

> On 7/8/03, SA Stephen Skipworth and I conducted an interview with Bryan Ross in the presence of his attorney based upon a proffer agreement proposed by the United States Attorney's office. In that interview, Ross denied being signifi-

cantly involved with the group engaging in these purchases. Rather, he admitted to having knowledge of their activities, but stated that he only participated on one occasion.

Ross told us that the only time he assisted in the purchase of a vehicle occurred in Shelby Twp. He said that he accompanied Aliska Walton to the Wells' residence with the intention of buying their Chevy Corvette that was listed for sale. Walton negotiated the deal and they paid for the car with a counterfeit check she got from Gabriel Lemus. Ross stated that they drove Walton's grey Jaguar to pick up the car. Ross also told us during the interview that he went with Dewayne Eli and Tiesha Faulkner to sell a BMW the other two had bought in Livonia. He stated that they sold the car to a dealership on Woodward between 7 & 8 mile.

Def.'s Mot., Ex. A. In the government's response brief, the government contends that Mr. Ross asserted that he learned about the Corvette from an advertisement in a "Trade & Times" magazine in his car. However, the Corvette purchase was made in April, and the magazine was not published until June. When this fact was brought up, Ross's counsel terminated the interview.

According to the defendant's motion (filed through counsel), Ms. Price does not remember what occurred at the meeting except that its purpose was for settlement discussions. It does not appear that the 2003 complaint matured into an indictment before the present case was commenced in the summer of 2007.

Ross insists that the statements were made during plea negotiations and are barred by Rule 410, even though an attorney for the government was not present. The government characterizes the meeting differently, describing the session as an opportunity for the defendant to reveal information he may know under the protection of limited immunity to see if plea negotiations would be fruitful. The government concedes that the discussion with agents Dodd and Skipworth was authorized by AUSA Morey.

"The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed.R.Crim.P. 11(f). Federal Rule of Evidence 410 states:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> . . .
>
> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
>
> However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

Fed.R.Evid. 410.

The history of Rule 410 is bound up with procedural rule governing guilty pleas—Federal Rule of Criminal Procedure 11—and tracks a course toward the requirement that guilty plea discussions may enjoy some measure of confidentiality only if they involve an attorney for the government; conversations initiated by federal agents are not protected under that re-

gime. Originally, the Sixth Circuit held that statements made to a law enforcement agent as part of an offer to plea bargain were not admissible at trial. *United States v. Brooks*, 536 F.2d 1137, 1139 (6th Cir.1976). Federal Rule of Criminal Procedure 11 was amended in 1979 specifically to overturn cases such as *Brooks*. *See, e.g.,* Fed.R.Crim.P. 11(e)(6) (1999) ("Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: ... (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn."); *United States v. Marks*, 209 F.3d 577, 582 (6th Cir.2000); *see also* Advisory Committee Notes to 1979 Amendments to Fed.R.Crim.P. 11(e)(6) (stating intention to overrule *Brooks* ).

At the same time, Federal Rule of Evidence 410 was modified in 1979 to "conform" to the amendments made to Fed. R. Crim P. 11. *See* Advisory Committee Notes to 1979 Amendments to Rule 410. Ultimately, in 2002 Fed. R. Crim P. 11 was reduced to its present form, which simply refers to Evidence Rule 410. But some of the earlier cases that discuss former Criminal Rule 11(e)(6) and the committee notes at the time of the amendments shed light on the present interpretation of the limits of Evidence Rule 410.

Although the language of the respective rules require the involvement of a state or government lawyer in plea discussions as a condition of protecting a defendant's statements from disclosure, from the outset the rules were not viewed as rendering the simple absence of the prosecuting attorney from the room during discussions as dispositive. The Advisory Committee notes

emphasized that the change "does not compel the conclusion that statements made to law enforcement agents, especially when the agents purport to have authority to bargain, are inevitably admissible." Advisory Committee Notes to 1979 Amendments to Fed.R.Crim.P. 11(e)(6). In an unpublished opinion, the Sixth Circuit has held that "[t]his rule can be fairly read to apply to statements made to a government attorney during the course of plea discussions *or to an agent whom the government attorney has authorized to engage in plea discussions.*" *United States v. O'Neal*, 992 F.2d 1218, 1993 WL 133807, at *9 (6th Cir. Apr. 28, 1993) (per curiam) (citing *United States v. Serna*, 799 F.2d 842, 849 (2d Cir.1986); *United States v. Swidan*, 689 F.Supp. 726, 728 (E.D.Mich. 1988)) (emphasis added); *see also United States v. Sikora*, 635 F.2d 1175, 1178 (6th Cir.1980) (Wiseman, J., dissenting). In *United States v. Cross*, 956 F.2d 1164, 1992 WL 48009, at **4–5 (6th Cir. Mar. 13, 1992), the Sixth Circuit once again relied heavily on the Second Circuit's decision in *United States v. Serna*, in which that court explained:

> The Notes of the Advisory Committee on Rules to the 1979 amendments indicate that the requirement of an attorney's presence was added to prevent the exclusion of statements made to government agents when there had been no participation of a government attorney. *See, e.g., United States v. Herman*, 544 F.2d 791 (5th Cir.1977). We think the rule can be fairly read to require the participation of a government attorney in the plea discussions, but not necessarily his physical presence when a particular statement is made to agents whom the attorney has authorized to engage in plea discussions.

*Serna*, 799 F.2d at 849.

█ This Court adopts that reasoning as well. It is the involvement of a govern-

ment attorney in the negotiation *process,* not his physical presence at the debriefing, that triggers the application of Rule 410. *See United States v. Swidan,* 689 F.Supp. 726 (E.D.Mich.1988) (holding that defendant's statements to agent protected by Fed.R.Evid. 410 where investigating agent found to be middleman between prosecutor and defendant). From the language of Mr. Morey's *Kastigar* letter, it is apparent that an AUSA authorized and approved the meeting. In addition, the police report notes that the defendant's participation in the meeting was "based upon a proffer agreement proposed by the United States Attorney's office." There is little doubt that the discussion was sanctioned—and maybe even initiated—by an attorney for the government.

■ But the government suggests that the purpose of the meeting was not to negotiate a plea; rather it was to see if the defendant had enough information to interest the government in starting plea negotiations, or possibly he might convince the government to abandon its case against him. Perhaps there is a distinction between a meeting in the nature of plea negotiations and one in which the parties' interest in embarking on plea discussions is assessed. However, if a line can be drawn between the two, it is not bold enough to withstand Rule 410's effect. The Court believes that such meetings, characterized as "preliminary discussions" and "proffers" by the government, constitute plea negotiations, albeit, perhaps, only in their nascent stages. Nonetheless, admissions, concessions, revelations, or confessions made by a defendant (or a putative defendant) during such a conference fairly are characterized as "statement[s] made in the course of plea discussions" within the meaning of Rule 410, and as such the defendant enjoys immunity from

the use of those statements within the limits of Rule 410.

■ The government proposes that it will not use Ross's alleged statements from July 2003 in its case-in-chief, but it may use them to impeach Ross or in rebuttal. That proposal tracks the terms of the "*Kastigar* letter." "The Supreme Court's decision in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), provides the applicable framework for evaluating a claim that the government used immunized testimony to secure a conviction." *United States v. Orlando,* 281 F.3d 586, 594 (6th Cir.2002). The letter in this case apparently was intended to lay out the scope of immunity and the accepted uses for the testimony. The problem, of course, is that the letter was never signed, or at least the government has no proof that it was. Letters of this nature have been characterized as offers of "pocket immunity," not statutory immunity for which a *Kastigar* hearing was required, and the parties "can only seek contractual remedies" for enforcement. *United States v. Mendizabal,* 214 Fed.Appx. 496, 502 (6th Cir.2006). There is no proof of a parallel oral agreement, and the unsigned letter is no more enforceable than an unsigned contract.

The Court concludes, therefore, that the government may not offer in evidence statements allegedly made by defendant Ross during his meeting with government agents in July 2003.

## II.

■ The second group of statements were made by Mr. Ross during the booking procedure that followed the arrest on the current indictment. On October 18, 2007, Ross was arrested for the present case. He was given his *Miranda* warning and was transported to the Detroit field office for processing. According to the

agent's report, during processing, Ross made the following statements:

1. Ross made statements to the effect of hoping federal prison was better than state prison and that he hoped they sold protein supplements in federal prison like they did in state prison.

2. When asked where he worked Ross stated that he was unemployed and that we knew what he did.

3. Ross stated that he wanted to hurry up and get to Milan so he could start lifting weights.

Def.'s Mot., Ex. C (December 18, 2007 arrest report).

Ross argues that the 2007 booking statements also should be excluded because they are unfairly prejudicial. Statements 1 and 3, he says, suggest that the defendant has knowledge of the criminal justice system, inviting a forbidden inference under Fed.R.Evid. 404. He contends that this improper purpose outweighs the meager probative value these statements would furnish. To a lesser extent, he argues that statement 2 is prejudicial as well.

The government concedes that the reference in statement 1 to Ross's prior state prison experience should not be related to the jury. But it insists that Ross's suggestion that he was headed to federal prison indicates guilty knowledge, and the evidence should be received on that basis.

Although "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant, Fed R. Evid. 401, such "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Fed R. Evid. 403. "Probative value and need for the evidence are separate considerations that weigh in favor of admission under the Rule 403 balancing test. *See* Fed.R.Evid. 403 advisory committee's note (stating that the rule involves 'balancing the probative value of *and* need for the evidence against the harm likely to result from its admission') (emphasis added)." *United States v. Stout*, 509 F.3d 796, 800 (6th Cir.2007).

■■■ " 'Unfair prejudice' does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.1993) (internal quotes and citation omitted); *see also Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 378 (6th Cir.1983) (stating "[o]f course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair' " (internal quotations omitted)). Instead, the concept of "unfair prejudice" is comprised of two distinct notions:

First, when the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence. *See United States v. Vandetti*, 623 F.2d 1144, 1149 (6th Cir.1980) (quoting Advisory Comm. Note to R. 403, stating, " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). Second, unfair prejudice can result when evidence that is only marginally probative

tends to be given preemptive weight by the jury substantially out of proportion to its logical force. *See Sutkiewicz v. Monroe Cnty. Sheriff,* 110 F.3d 352, 360 (6th Cir.1997) (stating that "[o]therwise relevant evidence may permissibly be excluded if it serves to inflame the passions of the jury"); *Vandetti,* 623 F.2d at 1149 (observing that evidence of a witness's invocation of his Fifth Amendment right before the jury raised "a real danger that ... [it] may be given undue weight" to the evidence "although it is entitled to none in the law").

*Dresser v. Cradle of Hope Adoption Center, Inc.,* 421 F.Supp.2d 1024, 1030 (E.D.Mich.2006); *see also Old Chief v. United States,* 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (quoting Advisory Committee's Notes on Fed.R.Evid. 403).

The Court agrees with the government that evidence tending to show the defendant's guilty knowledge is relevant, especially in light of the low threshold for relevance established by Federal Rule of Evidence 401. *Cf. United States v. Jackson,* 55 F.3d 1219, 1226 (6th Cir.1995) (holding that guilty knowledge can be inferred from fleeing from police officers and giving an implausible story). The probative value of such evidence is not particularly compelling, however, and its relevance depends upon a chain of inferences. *See United States v. Dillon,* 870 F.2d 1125, 1127 (6th Cir.1989) (considering evidence of flight, and observing that "the probative value of flight evidence depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged" (internal quotations omitted)).

The defendant points to the general prohibition against evidence of a character trait offered to prove conduct embodied in Rule 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion"), and contends that evidence that Ross was in prison before would allow the jury to infer that he is not law abiding and therefore more likely to have committed the crime charged. *See United States v. Lattner,* 385 F.3d 947, 956 (6th Cir.2004) (stating that "the law is clear that evidence of past criminal activity is inadmissible to show criminal propensity"). He argues that not only the direct reference to state prison should be prohibited, but the reference to lifting weights should be excluded as well because a juror who has seen popular (?) television shows about prison life would know that weigh-lifting was a pastime of prison inmates.

The Court agrees that evidence that Ross was in state prison is unfairly prejudicial because it could be used for an improper purpose. Such evidence has no legitimate probative value. But evidence that Ross was predicting his own trip to federal prison—either to gain access to protein supplements or to commence his personal weight training program—does not suggest past involvement with a prison system or past criminal activity. That evidence is not unfairly prejudicial. Likewise, statement 2 indicates that the defendant has no legitimate employment and that the agents know of the defendant's other—perhaps illicit—activities. Although the reference to unemployment might suggest improperly that poverty is a motive for the thefts in this case, *see United States v. Zipkin,* 729 F.2d 384, 390–91 (6th Cir.1984), the Court does not believe the possibility that the jury would draw

such an inference substantially outweighs the probative value of the evidence. If the defendant detects that the jury might draw an improper inference from that evidence, the defendant may propose a limiting instruction under Rule 105.

Finally, the Court previously granted the government's motion *in limine* to bar the defendant from offering evidence of alleged police misconduct at the time of his arrest at his house in October 2007 because the government did not intend to offer any evidence arising from that arrest. The defendant points out that his mention of protein supplements during booking referenced an earlier conversation that took place at the time of the arrest. If that is the case and the government offers statement 1, then the Court will permit the defendant to inquire about the full circumstances of the statement so that it may be considered in its proper context.

### III.

The Court finds that the defendant's statements from July 2003 were made in the course of plea discussions with the government. They are inadmissible. References made in the booking statements in October 2007 to the defendant's past prison encounters are more prejudicial than probative. The remainder of the statements are allowable.

Accordingly, it is **ORDERED** that defendant Ross's motion *in limine* [dkt # 208] is **GRANTED IN PART AND DENIED IN PART.** The government may not offer evidence of the defendant's statements during the July 2003 meeting with agents of the government, and the government may not offer portions of the October 2007 booking statements that reference state prison or past incarceration of the defendant. If the government chooses to offer other parts of the booking statements, it shall redact them to comply with this order and caution its witnesses to honor the limitations described in this opinion and order.